SAFEWAY TRAILS, INC., A CORPORATION OF THE STATE OF MARYLAND, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. DAVID D. FURMAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY AND HEAD OF THE DEPARTMENT OF LAW AND PUBLIC SAFETY; NED J. PARSEKIAN, ACTING DIRECTOR, DIVISION OF MOTOR VEHICLES, AND JOHN A. KERVICK, STATE TREASURER OF NEW JERSEY, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

---

THE GREYHOUND CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. JOHN A. KERVICK, TREASURER OF THE STATE OF NEW JERSEY, AND NED J. PARSEKIAN, ACTING DIRECTOR, DIVISION OF MOTOR VEHICLES, DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

---

LINCOLN TRANSIT CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, HILL BUS CO., A CORPORATION OF NEW JERSEY, ROCKLAND COACHES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, MANHATTAN TRANSIT COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, HUDSON BUS TRANSPORTATION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, SOMERSET BUS CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DeCAMP BUS LINES, A CORPORATION OF THE STATE, OF NEW JERSEY, AND WESTWOOD TRANSPORTATION LINES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS, v. NED J. PARSEKIAN, ACTING DIRECTOR, DIVISION OF MOTOR VEHICLES, DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Argued December 2 and 3, 1963—Decided February 3, 1964.

468

470

Mr. *Alan B. Handler,* Deputy Attorney General, argued the cause for defendants-appellants and cross-respondents (*Mr. Arthur J. Sills,* Attorney General of New Jersey; *Mr. Alan B. Handler,* on the brief).

Mr. *Merritt Lane, Jr.* argued the cause for plaintiff-respondent and cross-appellant, The Greyhound Corporation (*Messrs. McCarter & English,* attorneys; *Mr. Ross B. Abrash,* on the brief).

Mr. *William A. Roberts,* of the District of Columbia Bar, argued the cause for plaintiff-respondent and cross-appellant, Safeway Trails, Inc., etc. (*Messrs. Harrison & Jacobs,* attorneys; *Messrs. Roberts & McInnis,* of the District of Columbia Bar, of counsel and on the brief; *Mr. George M. Eichler,* joining in the brief).

Mr. *George M. Eichler* argued the cause for plaintiffs-respondents and cross-appellants, Lincoln Transit Co., Inc., etc., *et al.*

The opinion of the court was delivered by

PROCTOR, J. This appeal consists of three consolidated actions involving the interpretation and validity of the Interstate Busses Excise Tax, *N. J. S. A.* 48:4–20. The question raised is whether the statute which imposes an excise tax of ½ cent per mile on interstate autobuses operated over the highways of this State applies to mileage traveled over the New Jersey Turnpike and Garden State Parkway, and if so, whether the statute as applied violates the Commerce Clause of the Federal Constitution and the Equal Protection Clause of the Fourteenth Amendment.

Lincoln Transit Co. and other autobus companies filed a petition for a declaratory judgment in the Superior Court, Appellate Division, against Ned J. Parsekian, Acting Director, Division of Motor Vehicles, Department of Law and Public Safety of the State of New Jersey. Safeway Trails, Inc., filed a complaint in lieu of prerogative writ in the Superior Court, Law Division, against David D. Furman, Attorney General of the State of New Jersey, Parsekian, and John A. Kervick, State Treasurer of New Jersey. Greyhound Corporation filed a complaint for injunctive relief and a declaratory judgment in the Superior Court, Chancery Division, against Kervick and Parsekian. The Appellate Division ordered that these three actions, in which basically the same relief was being sought, be consolidated and transferred to the Superior Court, Law Division, for trial

Following trial the Law Division held that the New Jersey Turnpike and Garden State Parkway were not highways within the meaning and intendment of *N. J. S. A.* 48:4–20 and that the highway-use tax imposed by the statute was improperly applied to and collected from the plaintiffs for mileage traveled over those roads and should be refunded. Defendants were enjoined and restrained from enforcing the tax with respect to mileage traveled by interstate autobuses over the New Jersey Turnpike and Garden State Parkway. *Safeway Trails, Inc. v. Furman,* 76 *N. J. Super.* 90 (*Law Div.* 1962). The court later held that plaintiffs were not

entitled to interest upon the refund of the tax monies. *Safeway Trails v. Furman*, 77 *N. J. Super.* 26 (*Law Div.* 1962). Defendants appealed from the judgment below, and the plaintiffs filed joint cross-appeals from that portion of the judgment which denied interest on the tax refunds.

The plaintiffs, common carriers of passengers, operate their autobuses over the highways of this State on both intrastate and interstate journeys. They travel extensively over either the New Jersey Turnpike or the Garden State Parkway. As interstate autobus operators plaintiffs are subject to the provisions of *N. J. S. A.* 48:4–20 which, prior to amendment in December 1962[1], provided:

"Every person owning or operating an autobus which is operated over any highway in this state for the purpose of carrying passengers from a point outside the state to another point outside the state, or from a point outside the state to a point within the state, or from a point within the state to a point outside the state shall pay to the commissioner of motor vehicles, as an excise for the use of such highway, one-half cent for each mile or fraction thereof such autobus shall have been operated over the highways of this state, except that no excise shall be payable for the mileage traversed in any municipality to which such owner or operator has paid a monthly franchise tax for the use of its streets under the provisions of section 48:4–14 of this title."

*N. J. S. A.* 48:4–20 has been in effect since May 7, 1934. *L.* 1934, *c.* 68.

The Legislature by the New Jersey Turnpike Authority Act (*L.* 1948, *c.* 454, as amended and supplemented by *L.* 1949, *cc.* 40 and 41; *N. J. S. A.* 27:23–1 *et seq.*) provided for the creation of the Turnpike which became available to the public in the latter part of 1951. The Garden State Parkway was established pursuant to the New Jersey Highway Authority Act (*L.* 1952, *c.* 16; *N. J. S. A.* 27:12B–1 *et seq.*) and became available in the summer of 1954. Both projects were authorized "in order to facilitate vehicular traf-

---

[1] The amendment was administrative only, substituting "Director of the Division of Motor Vehicles" for "commissioner of motor vehicles."

fic and remove the present handicaps and hazards on the congested highways in the State, and to provide for the construction of modern express highways embodying every known safety device including center divisions, ample shoulder widths, longsight distances, multiple lanes in each direction and grade separations at all intersections with other highways and railroads * * *." *N. J. S. A.* 27:23–1, 27:12B–2. In short, the statutes contemplated the creation of express highways superior to existing roads which would provide safer, faster, and more convenient travel in and through the State.

The New Jersey Turnpike and the Garden State Parkway were constructed by and are operated and controlled by the New Jersey Turnpike Authority and the New Jersey Highway Authority, respectively, in accordance with the authorizing legislation. Each authority was established in the State Highway Department as a body corporate and politic and each constitutes "an instrumentality exercising public and essential governmental functions," whose activities in the exercise of its authority "shall be deemed and held to be an essential governmental function of the State." *N. J. S. A.* 27:23–3, 27:12B–4. Each authority is comprised of three members appointed by the Governor with the advice and consent of the Senate. *Ibid.*

The statutes creating these Authorities provide for the sale to the public of the Authorities' bonds to finance the construction of the projects. The statutes authorize the Authorities to fix and collect tolls and other charges for the use of such projects. The operations of both Authorities are designed to be financially self-liquidating. The statute contemplates that upon payment of all bonds and notes, the Turnpike shall become part of the State Highway Department, to be operated free of tolls. *N. J. S. A.* 27:23–16. The State has guaranteed the punctual payment of the Highway Authority (Parkway) bonds and has provided for the funding of this guarantee. This Court has recognized that the property and roads of the Highway Authority are held for the

State. *Behnke v. New Jersey Highway Authority*, 13 *N. J.* 14, 29 (1953).

In 1950 in response to a request from the Division of Taxation, the then Attorney General issued Formal Opinion No. 78–1950 in which he advised that interstate autobus operators would not be subject to the ½ cent a mile tax provided by *N. J. S. A.* 48:4–20 for mileage traveled on the Turnpike. In his view the excise tax was intended to compensate the public for the cost and construction of public roads; the Turnpike Authority Act provided its own means of financing all expenses of the project; and therefore the Turnpike project was not a "highway" within the intendment of *N. J. S. A.* 48:4–20. In accordance with this opinion, no excise taxes were levied on mileage traveled by interstate autobuses over the Turnpike, and later for similar reasons, the Parkway. In 1960, however, Attorney General Furman issued Formal Opinion No. 11–1960 in which he determined that the New Jersey Turnpike was a "highway" for the purpose of *N. J. S. A.* 48:4–20 and that the application of the highway excise tax to interstate buses using the Turnpike would not be violative of constitutional guarantees. Pursuant to this ruling, the Acting Director of the Division of Motor Vehicles, on June 1, 1960, notified interstate autobuses using the Turnpike and Parkway that they would be required to report such mileage to the Division of Motor Vehicles and would be required to pay a tax on such mileage under *N. J. S. A.* 48:4–20. The plaintiffs have complied with this notification and have paid the tax imposed under protest.

Two questions are presented on this appeal: First, whether mileage traveled over the New Jersey Turnpike and Garden State Parkway by interstate autobuses should be included in the computation of the excise tax imposed by *N. J. S. A.* 48:4–20 and second, if so, whether the imposition of the tax violates the Commerce Clause of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment.

## I.

■■ Generally, our duty in construing a statute is to determine the intention of the Legislature. It is apparent that in 1934 when *N. J. S. A.* 48:4–20 was enacted, turnpikes and parkways of the type authorized by the Legislature under the Turnpike Authority Act and Highway Authority Act, if not unknown to the legislators, were certainly not within their specific contemplation. However, it is an established rule of statutory construction that a statute written in general terms will be given prospective application to situations unknown or nonexistent at the time of its enactment which are within its general purview and scope where the language fairly includes them. *Cain v. Bowlby,* 114 *F. 2d* 519 (10 *Cir.* 1940); *State v. Struck,* 44 *N. J. Super.* 274, 278 (*Cty. Ct.* 1957); 2 *Sutherland, Statutory Construction* § 5102, *p.* 509 (1943).

■ Certainly the statutory language "any highway in this state" is broad enough to include within its general and ordinary meaning the New Jersey Turnpike and the Garden State Parkway.[2] Indeed, the legislation providing for their construction refers to them as "modern express highways." *N. J. S. A.* 27:23–1, 27:12B–2, quoted *supra.* And as stated in *Atlantic & S. Ry. Co. v. State Bd. of Assessors,* 80 *N. J. L.* 83, 86 (*Sup. Ct.* 1910), "For most purposes a turnpike is regarded as a highway; and it may be said to be generally so regarded when the term highway is used in a statute, unless the words and purposes of the act display a different legislative intent." See also *Miller v. Pennsylvania-Reading Seashore Lines, Inc.,* 117 *N. J. L.* 152 (*E. & A.* 1936); *State, Parker v. City of New Brunswick,* 32 *N. J. L.* 548 (*E. & A.* 1867); *Fenton v. Margate Bridge Co.,* 24 *N. J.*

---

2 *Webster's New International Dictionary* (2d ed. 1959) defines "highway" as:

"1. A main road or thoroughfare; hence, a road or way open to the use of the public, including in the broadest sense of the term ways upon water as well as upon land. * * * Syn.—Road, path, course. See way."

*Super.* 450 (*App. Div.* 1953), certification denied 12 *N. J.* 350 (1953). In the absence of an explicit indication of a special meaning, the words of a statute are to be given their ordinary and well understood meaning. *Ford Motor Co. v. New Jersey Dept. of Labor and Industry,* 5 *N. J.* 494, 503 (1950); *Morris & Essex Investment Co. v. Director of Div. of Taxation,* 33 *N. J.* 24, 34 (1960). Accordingly, we should construe the term "any highway" in *N. J. S. A.* 48:4–20 to include the Turnpike and the Parkway unless the purpose and general purview of the enactment compel a more restrictive meaning.

The forerunner of the present tax provision was enacted in 1927 (*L.* 1927, *c.* 184) and was accompanied by the following statement of purpose:

"This bill imposes an excise on the use of highways of the State by motor vehicles used for carrying passengers or property for hire in interstate commerce. The purpose is to compel such vehicles to bear their just share of taxation. At the present time such vehicles pay nothing to the State of New Jersey, except the registration fees provided for under the Motor Vehicle Act, while other vehicles operating wholly within the State are subject to taxation. The right to impose such a tax on such vehicles engaged in interstate commerce has been recently upheld by the Federal courts."

It is apparent that the purpose of the statute was to require interstate autobuses to pay their fair share of taxation, and that a tax was to be levied on the privilege of using the highways in the State in order to compensate the State in part for the costs of constructing and maintaining its network of highways and of administering road laws. See *Interstate Busses Corp. v. Blodgett,* 19 *F.* 2d 256 (*D. Conn.* 1927), affirmed 276 *U. S.* 245, 48 *S. Ct.* 230, 72 *L. Ed.* 551 (1928).

The trial court stated that the excise tax was of a compensatory nature and concluded therefrom that the Legislature could not have intended to include within the scope of *N. J. S. A.* 48:4–20 mileage traveled over the Turnpike and Parkway "due to the fact that tolls paid by the users of these expressways obviate the necessity for the State to seek compen-

sation." 76 *N. J. Super.*, at *p.* 111. We think the trial court misconceived the purpose and general purview of the statute.

We agree that the Legislature intended the tax to be compensatory for costs incurred by the State when its roads were used by interstate buses. However, we believe it was intended to be compensatory in a broad and general sense since the tax is imposed at a flat rate of ½ cent per mile traveled on *any* highway in the State. Clearly, it was not anticipated that ½ cent would compensate the State for each particular mile traveled, regardless of the type of road used. The cost to the State of constructing and maintaining its roads and of regulating traffic thereon varies considerably from road to road, depending on the type of construction and improvement costs, and numerous other factors. Compare the cost to the State of constructing and maintaining an elevated express highway in a highly developed urban area, such as the Pulaski Skyway, with the cost of a highway running through open country. Clearly, the ½ cent tax applies alike to mileage traveled on either road. It is therefore clear that the mileage formula adopted by the Legislature, as any tax formula, was but an averaging device intended to result in fair compensation for the average trip by the average interstate user over an average-cost road. And since the average trip would utilize both low-cost and high-cost roads, the formula to that extent would be a suitable measure for the imposition of the tax. Any measure adopted by the Legislature for the imposition of a tax for the privilege of road use can, because of administrative difficulties, be compensatory only in a broad and general sense. For this reason taxes measured by horsepower, tonnage capacity or chassis weight, singly or in combination, or even flat fees payable annually, have been upheld as reasonable measures of the privilege granted. See *Capitol Greyhound Lines v. Brice,* 339 *U. S.* 542, 544, 70 *S. Ct.* 806, 807, 94 *L. Ed.* 1053, 1056 (1950) ; *Kane v. New Jersey,* 242 *U. S.* 160, 168, 37 *S. Ct.* 30, 32, 61 *L. Ed.* 222, 227 (1916). The tax calculated at the rate of ½ cent a mile is intended to compensate the State for providing a complete network of

highways and is not intended as a charge for the actual use of a particular highway. In short, the statute does not intend to collect a "rent" for the use of a particular road but establishes a reasonable measure of an interstate autobus's fair share of taxation for the use of New Jersey roads.

If we were to determine that mileage traveled by interstate autobuses on the Turnpike and Parkway should be excluded from the tax base, we would thereby upset the measure of the tax established by the Legislature. As the evidence before us indicates, roads maintained by the Highway Department in the vicinity of these toll roads have become high-cost roads because of increased traffic thereon generated by users of these toll roads. It cannot be denied that the State, its counties, and municipalities have had to meet increased burdens in the construction, maintenance, improvement, and policing of roads as a result of the creation and use of the Turnpike and Parkway. Accordingly, a tax of $\frac{1}{2}$ cent per mile on these high cost subsidiary roads, if an exemption were to be granted for toll-road mileage, would not compensate the State in accordance with the legislative purpose.

We should avoid any interpretation of the statute which would cripple the mileage formula and destroy its usefulness as an averaging device. Therefore, to comport with the express legislative purpose that interstate autobuses shall bear their fair share of taxation, it is necessary to conclude that mileage traveled on the Turnpike and Parkway should be included in computing the tax imposed under *N. J. S. A.* 48:4-20.

Moreover, the trial court's conclusion that the charging of tolls obviates the necessity for the State to seek compensation does not seem warranted by the evidence. Although the Turnpike and Parkway reimburse the State for the costs of providing State Police on these toll roads, the State incurs not only the road costs discussed above but also other expenses made necessary by the Turnpike and Parkway, which expenses are not reimbursed to the State by the respective Authorities. For example, the State incurs expenses in con-

nection with the enforcement of its drunk-drivers program, the enforcement of its criminal laws through detectives assigned to both roads, the administration of the Division of State Police, the operation of scientific facilities and communication systems with the two toll roads, and the enforcement of traffic safety programs, such as the fatal accident program and the excessive speed program (29% of the violations of which occur on the Turnpike and Parkway).

The trial court was of the opinion, and the plaintiffs here contend, that the term "highway" in *N. J. S. A.* 48:4-20 is ambiguous and therefore extrinsic aids should be used in determining its meaning. In pursuing this approach to the problem, the trial court found three reasons (in addition to the one discussed above) to support its conclusion that the Turnpike and Parkway are not "highways" within the meaning of the statute. The reasons given are:

1. The public policy of this State to abolish private toll roads and to make all roads free for public use prior to the enactment of *N. J. S. A.* 48:4-20 made it unlikely that the Legislature intended the word "highway" as used therein to include toll roads.

2. Since *N. J. S. A.* 48:4-23 and 48:4-32 provide that the tax and a statutory penalty for its nonpayment shall be appropriated to the State Highway Department "for the construction and maintenance of highways" and since the State Highway Department could not legally use the tax monies for construction of private toll roads, the word "highway" in those sections must have meant free public roads and, accordingly, "highway" in *N. J. S. A.* 48:4-20 also meant only free public roads under the rule of construction that a word should be given the same meaning throughout an enactment.

3. The Turnpike Authority and the Highway Authority are independent corporate entities whose roads are not "highways of this State" within the meaning of *N. J. S. A.* 48:4-20 because their roads are similar to private toll roads shown under point 1 above to be excluded from the statute.

We believe that construction of the meaning of the word "highway" in *N. J. S. A.* 48:4–20 by the trial court was unnecessary since, as shown above, we are of the opinion that the word "highway" and particularly "any highway" is clear and unambiguous and within its ordinarily understood meaning encompasses roads such as the Turnpike and Parkway. "Extrinsic aids are never used to create an ambiguity, only to resolve one." *Myers v. Cedar Grove Tp.,* 36 *N. J.* 51, 61 (1961). When it is recognized that the new situation is within the language of the enactment, the inquiry becomes whether its inclusion is consistent with the legislative purpose. It is clear that the above arguments of the trial court, relied on here by the plaintiffs, do not clarify the legislative purpose, nor do they show that imposing the tax with respect to Turnpike and Parkway mileage would be inconsistent therewith. The public policy to abolish private toll roads at the time of the enactment of *N. J. S. A.* 48:4–20, if it relates at all to the purpose of taxing interstate buses, would seem more compatible with the imposition of a tax for their use than with an exemption for mileage traveled on such roads. Likewise, the provisions for the use of tax revenues in *N. J. S. A.* 48:4–23 and *N. J. S. A.* 48:4–32 do not indicate an intention to restrict the imposition of the tax, particularly where the result would be inconsistent with the purpose of requiring the taxpayers to bear their fair share of taxation. The rule relied on by the trial court was stated by Justice Heher as follows:

"It is an elementary rule in aid of interpretation that, barring differentiation in the context, where the same word or phrase is used more than once in a statute in relation to the same subject matter, and in one connection its meaning is clear and in another it is doubtful or obscure, it is in the latter case given the same construction as in the former." *Harper v. New Jersey Mfrs. Cas. Ins. Co.,* 1 *N. J.* 93, 101 (1948) (dissenting opinion), quoted at 76 *N. J. Super., p.* 105.

It is clear that the rule has no application to the present case under our view of the problem presented, since we find no ambiguity in the word "highway" as used in *N. J. S. A.*

48:4–20. Moreover, there is a differentiation in the context and the subject matter in which the word is used in the sections compared, *i. e., N. J. S. A.* 48:4–20 refers to the imposition and measure of the tax whereas *N. J. S. A.* 48:4–23 and *N. J. S. A.* 48:4–32 refer only to the use to which revenues collected will be put.

Our discussion of point 1 raised above disposes also of point 3. But, in any case, the Turnpike Authority and the Highway Authority cannot be equated to private companies operating toll roads. These Authorities have been designated as instrumentalities and agencies of the State by the statutes creating them. In effect, they are arms of the State government operating certain highways for the State. As said by Justice Heher in *Behnke, supra,* 13 *N. J.,* at *p.* 29:

"* * * The construction and operation of this toll facility [Parkway] compose a State project for public use, and it does not matter that for administrative reasons deemed good and sufficient the fulfillment of the project was entrusted to an autonomous body created by the State. The Authority is but the instrument by which the work is to be accomplished; the highway and all its property are held for the State; the corporate body exercises a public function on behalf of the sovereign, and is subject to control and dissolution by the sovereign which gave it being conditioned only upon observance of the constitutional guarantees against the impairment of the obligation of contract. *New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235, 69 *A. 2d* 875, 878, (1949)."

Plaintiffs urge that where the import of a statute is doubtful, the practical construction put upon it over a long period of time by an agency charged with its enforcement is of some weight in determining its proper significance. We have considered the opinion of the Attorney General rendered in 1950, on the basis of which Turnpike and Parkway mileage was exempted from the tax. Although administrative interpretation of a statute is entitled to weight in determining its meaning, where that interpretation conflicts with our view of the plain meaning of the language used and the statutory purpose, we should not hesitate to reject it. *Sutherland, op. cit., supra,* § 5104. Moreover, we should also give some weight to

the Attorney General's opinion rendered in 1960, which reconsidered and revised the earlier administrative interpretation. "The Court is not bound by an administrative construction, and if that construction is not uniform and consistent, it will be taken into account only to the extent that it is supported by valid reasons." *Burnet v. Chicago Portrait Company*, 285 *U. S.* 1, 16, 52 *S. Ct.* 275, 76 *L. Ed.* 587, 595 (1932). Plaintiffs additionally argue that *N. J. S. A.* 48:4–21, which provides for filing a report of the tax under *N. J. S. A.* 48:4–20 and which uses the statutory language "over the highways of this State," was re-enacted in 1958 (*L.* 1958, *c.* 171) and that the Legislature thereby approved the interpretation of the Attorney General in 1950. We note that the legislative action in 1958 was concerned only with administrative detail[3] and not with substantive provisions. As Chief Justice Warren said, "Re-enactment * * * is an unreliable indicium at best." *Commissioner v. Glenshaw Glass Co.*, 348 *U. S.* 426, 431, 75 *S. Ct.* 473, 477, 99 *L. Ed.* 483, 490 (1955). And when, as here, it does not appear that the administrative interpretation has been considered by the Legislature in its re-enactment, it has been said that the basis for the re-enactment rule vanishes. 1 Davis, *Administrative Law*, § 5.07, *p.* 334 (1958). In any case, a later administrative interpretation will be permitted to alter a former re-enacted construction, although not retroactively. *Helvering v. Wilshire Oil Co.*, 308 *U. S.* 90, 100, 60 *S. Ct.* 18, 24, 84 *L. Ed.* 101, 107 (1939).[4]

In view of the foregoing, we conclude that the term "highway" in *N. J. S. A.* 48:4–20 includes the New Jersey

---

[3] The day of the month on which the report was due was changed from the "tenth" to the "twenty-fifth," and the designation of the administrative head was changed from "commissioner of motor vehicles" to "Director of the Division of Motor Vehicles."

[4] At the oral argument the State conceded that if it attempted to apply the statute retroactively for years prior to 1960 on the basis of a favorable decision here, a substantial issue as to the validity of its action would be presented. We gather that the State does not intend to tax for years prior to 1960.

Turnpike and the Garden State Parkway, and accordingly the tax imposed thereunder applies to mileage traveled by interstate buses on those roads.

## II.

Plaintiffs' constitutional attack against the imposition of the tax on Turnpike and Parkway mileage is twofold. They contend that the application of *N. J. S. A.* 48:4–20 to mileage traveled by interstate buses on the Turnpike and Parkway constitutes an unlawful burden on interstate commerce in violation of the Commerce Clause and denies them equal protection contrary to the Fourteenth Amendment.

Plaintiffs' argument that the interstate autobus excise tax as applied to Turnpike and Parkway mileage offends the Commerce Clause is substantially as follows: (1) Since they pay tolls directly proportioned to Turnpike and Parkway use which are fully compensatory for the costs of construction, maintenance, and policing of the Turnpike or Parkway, the imposition of an additional ½ cent a mile tax must exceed reasonable compensation for the use of those roads; (2) the formula as applied to toll-road mileage therefore bears no reasonable relation to a fair charge for the privilege granted; (3) the tax is therefore an attempt to tax general governmental costs to interstate buses as a condition of their operation; and (4) that such a tax is invalid as a direct burden on interstate commerce.

Plaintiffs do not dispute that a state may impose a reasonable, nondiscriminatory tax upon interstate carriers which use its highways to compensate the state for the cost, maintenance and repair of its highways and for the cost of administering traffic regulations. *Capitol Greyhound Lines v. Brice, supra.* The *Brice* case established the proposition that such a tax will be upheld unless it is shown that: (1) the tax discriminates against interstate commerce in favor of intrastate commerce; (2) the tax is imposed on the privilege of doing an interstate business as distinguished from a tax exacting con-

tributions for road construction and maintenance or for administration of road laws; or (3) the amount of the tax exceeds fair compensation to the state. 339 *U. S.*, at *p.* 544, 70 *S. Ct.*, at *p.* 807, 94 *L. Ed.*, at *p.* 1055.

Plaintiffs' contention that the toll plus the tax exceeds fair compensation to the State is predicated on the theory that the toll and the tax are levied for the same privilege, *i. e.*, the use of the Turnpike or Parkway, and that the toll is "fair compensation" for that privilege. The fallacy in this contention is that the toll is not to be equated with the tax. A different privilege is granted by each.

The tax has been imposed by the Legislature on interstate autobuses using State highways in order to require them to bear their fair share of taxation, *i. e.*, to contribute to highway construction, maintenance, and policing costs. The purpose is not only declared by the statutory declaration of purpose but it is also evident from the original statutory dedication of funds to the Highway Department for use for construction and maintenance of highways. *N. J. S. A.* 48:4–23. On the other hand, the Turnpike or Parkway toll, while it is intended to compensate the Authority (and indirectly the State) for costs of construction, maintenance, and operation of the toll road used, is in the nature of a special tax levied for the use of a special facility. *Cf. Port of New York Authority v. Hackensack Water Co.*, 41 *N. J.* 90, 106 (1963). The Turnpike and Parkway are in the nature of luxury roads, and their users derive substantial savings of time and fuel and also benefit from the advantages of a safer route. The assumption underlying the operation of such roads is that the saving of time and money and the additional convenience resulting from the use of these roads rather than alternate highways provide the user with benefits equivalent to the amount of tolls charged. The toll does not serve the same purpose as the excise tax, since its proceeds are specifically allocated to the costs of the particular road. The costs to the State of providing and maintaining a network of highways has not decreased since the Turnpike and Parkway be-

came available, but, on the contrary, the evidence indicates there are additional and increased burdens on the State in providing and improving subsidiary roads to handle the increased traffic generated by Turnpike and Parkway users. The Turnpike and Parkway do not exist in a vacuum, they are but two roads in the network of New Jersey highways available to and used by interstate autobuses. The interrelationship of the Turnpike and Parkway with the rest of the New Jersey highway system presents problems and burdens to the State. Interstate autobus operators using these toll roads can be asked to contribute their fair share toward meeting the costs of these problems and burdens.

Since the purpose of the tax is valid, *i. e.,* compensation for the privilege of road use, if the tax is nondiscriminatory, it must be upheld unless the plaintiffs show that it is excessive. *Capitol Greyhound Lines v. Brice, supra.* Plaintiffs contend that the tax must be deemed excessive since it bears no reasonable relationship to the privilege granted, *i. e.,* that a fair compensatory tax for the use of highways cannot be computed by considering toll-road mileage.

A tax for the use of highways need not bear any specific relationship to the extent of road use. *Kane v. New Jersey, supra.* A mileage tax is normally considered to be *prima facie* compensatory because it is directly proportional to road use. But a formula not related to road use will be upheld unless the challenger shows that the result of the tax is an unreasonable burden on interstate carriers. *Capitol Greyhound Lines v. Brice, supra.* Because of the countless factors involved in determining fair compensation, it is enough if the formula results in a "rough approximation" of fair compensation. 339 *U. S.,* at *p.* 546, 70 *S. Ct.,* at *p.* 809, 94 *L. Ed.,* at *p.* 1057.

As shown in Part I of this opinion, the State incurs many expenses in connection with the use of the Turnpike and Parkway. Subsidiary roads are high-cost roads to the State because of the traffic congestion thereon resulting from Turnpike and Parkway traffic. And the State incurs

other expenses in the administration of its road laws in connection with toll road use. The fact that the particular road used by the taxpayer does not derive a direct benefit from the tax imposed for its use does not affect the validity of the tax. See *Dixie Ohio Express Co. v. State Revenue Comm.*, 306 *U. S.* 72, 77, 59 *S. Ct.* 435, 437-438, 83 *L. Ed.* 495, 499 (1939). And the fact that the use of the Turnpike or Parkway may be less burdensome financially to the State (aside from the expenses of the respective Authorities) than other highways in the State does not destroy the validity of the measure of the tax if the result of the tax is fair compensation to the State. As was said in *Hendrick v. Maryland*, 235 *U. S.* 610, 624, 35 *S. Ct.* 140, 142, 59 *L. Ed.* 385, 391 (1915), with respect to state taxes for road use:

"The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair, and practical standard, they constitute no burden on interstate commerce."

Here the tax is measured by the miles traveled within the State. The formula used in imposing the tax is not a measure of constitutionality so long as it may be deemed a reasonable exercise of legislative judgment. See *Brice, supra,* where Justice Black discusses the many and varied measures, *e. g.,* chassis weight, tonnage capacity or horsepower, which have been upheld against constitutional attack. 339 *U. S.,* at *p.* 544, 70 *S. Ct.,* at *p.* 808, 94 *L. Ed.,* at *p.* 1056. It is a reasonable exercise of legislative judgment that the amount of the tax due as a contribution from interstate bus users shall be measured by the miles traveled over all roads in the State.

Moreover, the tax does not fall as "double taxation," as urged by the plaintiffs, because a toll is also charged for use of the roads. The State may lay more than one tax for the privilege of road use. See *Interstate Busses Corp. v. Blodgett,* 276 *U. S.* 245, 48 *S. Ct.* 230, 72 *L. Ed.* 551 (1928). The test is whether the taxes imposed result in an unreasonable amount in the aggregate. As was said in *Bode v. Barrett,*

412 *Ill.* 204, 106 *N. E. 2d* 521, 531 (*Sup. Ct.* 1952), affirmed 344 *U. S.* 583, 73 *S. Ct.* 468, 531, 97 *L. Ed.* 567 (1953): "The proper test of constitutionality is whether or not the total of excise taxes levied for the privilege of using State roads produces an amount which is shown to be in excess of fair or reasonable compensation to the State for such privilege." There has been no showing that the total taxes paid by plaintiffs plus tolls paid for the Turnpike and Parkway exceed fair compensation for the use of State highways. *Cf. Shirks Motor Express Corp. v. Messner,* 375 *Pa.* 450, 100 *A. 2d* 913 (*Sup. Ct.* 1953), appeal dism. *sub nom. Interstate Motor Freight System v. Messner,* 347 *U. S.* 941, 74 *S. Ct.* 639, 98 *L. Ed.* 1090 (1954).

We conclude that the tax is not imposed for the privilege of doing an interstate business nor does the amount of the tax exceed fair compensation to the State. Accordingly, unless it discriminates against interstate commerce in favor of intrastate commerce it does not violate the Commerce Clause.

Plaintiffs list the taxes imposed on them by New Jersey and assert that although they pay all taxes paid by intrastate carriers, they pay in addition the interstate autobus excise tax imposed by *N. J. S. A.* 48:4–20, and that no similar tax is paid by intrastate carriers, either on the Turnpike and Parkway or on other State highways. Thus, they claim that the mileage tax is discriminatory since it is not imposed on autobuses carrying passengers in intrastate commerce. But, intrastate autobus operators pay a gross receipts tax for the privilege of intrastate operation levied under *N. J. S. A.* 48:4–14 which provides:

"Every person owning or operating an autobus in any municipality of this State shall, on or before the twenty-fifth day of each calendar month, file with the chief fiscal officer of the municipality a statement, verified by oath, showing the gross receipts from the business of such autobus or busses during the preceding calendar month, and shall at the same time pay to such fiscal officer of such municipality 3% of such gross receipts as a monthly franchise tax for revenue for the use of the streets; provided that if the scheduled bus miles over

which the autobus is operated shall extend beyond the limits of such municipality, such person shall include in such statement the length of the scheduled bus miles over which the autobus is operated both within and without the municipality, and shall pay as such franchise tax to such municipality 3% of such proportion of the gross receipts as the length of the scheduled bus miles operated in the municipality bears to the entire length of the scheduled bus miles operated both within and without the municipality; provided, however, that none of the provisions of this article shall be applicable to a charter bus operation or special bus operation.

The sum accruing to any municipality under this section when paid shall be in lieu of all other franchise taxes and municipal license fees."[5]

There is a total lack of proof in the record that the 3% gross receipt tax imposed on intrastate carriers results in a lesser burden on those carriers than the burden imposed on interstate carriers by the mileage tax of *N. J. S. A.* 48:4–20. In the absence of evidence that the tax on interstate carriers results in a heavier financial burden than the tax imposed on intrastate carriers, it cannot be said that the tax levied on interstate carriers is discriminatory merely because it differs in form or adopts a different measure or method of assessment. *Interstate Busses Corp. v. Blodgett, supra,* 276 *U. S.,* at *p.* 251, 48 *S. Ct.,* at *p.* 231, 72 *L. Ed.,* at *p.* 554. In that case the appellant, an interstate carrier, contended that it was discriminated against in favor of intrastate carriers by the Connecticut tax statutes which imposed a mileage tax on interstate carriers and a gross receipts tax on intrastate carriers similar to those imposed by our statutes. In rejecting this contention, the Court said:

"To gain the relief for which it prays, appellant is under the necessity of showing that in actual practice the tax of which it complains falls with disproportionate economic weight on it." 276 *U. S.,* at *p.* 251, 48 *S. Ct.,* at *p.* 231, 72 *L. Ed.,* at *p.* 555.

---

[5] "Autobus" is defined in *N. J. S. A.* 48:4–1 as follows: "The term 'autobus' as used in this chapter means and includes, except as hereinafter noted, any motor vehicle or motorbus operated over public highways or public places in this State for the transportation of passengers for hire in intrastate business, notwithstanding such motor vehicle or motorbus may be used in interstate commerce."

However, plaintiffs contends that they also pay the tax imposed under *N. J. S. A.* 48:4–14. Our examination of the record indicates that this tax is paid only when the interstate operator has elected to do an intrastate business concurrent with his interstate journey, in which case he pays the same tax as the intrastate carrier, *i. e.*, 3% of his gross receipts collected in intrastate commerce. Moreover, an interstate operator who is also engaged in an intrastate operation, and thus subject to the gross receipt tax, may deduct from the miles traveled on the interstate journey (and subject to the ½ cent mileage tax) those miles he operates within the municipality and upon which he is paying the gross receipts tax. In other words, full credit is allowed on the mileage tax for all miles subject to the gross receipts tax.

Since intrastate carriers are taxed under *N. J. S. A.* 48:4–14 for the use of highways, and since the interstate operator does not pay this tax unless he elects to do a concurrent intrastate business, and in the absence of proof that in actual practice the tax imposed on the plaintiffs is more burdensome than that imposed on intrastate carriers, we conclude that *N. J. S. A.* 48:4–20 does not discriminate against interstate autobus operators in favor of intrastate autobus operators.

In view of the above, we find that the tax imposed under *N. J. S. A.* 48:4–20 does not offend on its face or in its application to plaintiffs' operations the Commerce Clause of the Federal Constitution, and it does not deny plaintiffs equal protection under the Fourteenth Amendment. Since we are of the opinion that the tax was properly imposed, it is unnecessary for us to review the trial court's decision that no interest is payable on the tax collected.

The judgment of the Superior Court, Law Division, is reversed.

*For reversal* — Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—None.