TOWNSHIP OF MIDDLETOWN, APPELLANT, v. STORER CABLE COMMUNICATIONS, INC., RESPONDENT, AND NEW JERSEY CABLE TELEVISION ASSOCIATES, INTERVENOR.

Superior Court of New Jersey
Appellate Division

Submitted October 30, 1985—Decided November 26, 1985.

---

[3]At the time of remand the parties should also consider the fact that the judgment does not make the sentence imposed concurrent with any parole violation. But see *N.J.S.A.* 2C:44–5c in effect at the time of this sentence.

574

Before Judges FRITZ, GAYNOR and BAIME.

*Benjamin P. De Sena,* attorney for appellant.

*Kirsten, Friedman & Cherin,* attorneys for respondent (*Dennis C. Linken,* on the brief).

*Holzapfel, Perkins & Kelly,* attorneys for intervenor (*Cynthia D. Benn,* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent Board of Public Utility Commissioners (*Andrea Silkowitz,* Deputy Attorney General, of counsel; *Joseph L. Yannotti,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

BAIME, J.A.D.

This is an appeal by the Township of Middletown (Township) from a final determination of the Board of Public Utility Commissioners (Board) in two related administrative proceedings pertaining to the construction and operation of a cable television system in the municipality. In its written decision, the Board rejected the Township's request to charge Storer Cable Communications, Inc. (Storer), the franchisee, an annual franchise fee in excess of that prescribed by *N.J.S.A.* 48:5A–30(a). The Board also determined that the same statute barred the Township from imposing road opening permit fees upon Storer.

A brief description of the applicable statutory provisions is necessary for a complete understanding of the issues presented. In 1972, our Legislature enacted the Cable Television Act. *N.J.S.A.* 48:5A–1 *et seq.* The statutory scheme provides a framework for the issuance and regulation of cable television franchises. The power over cable television, both in franchising and regulation, is divided between the Board and the municipalities. *Clear T.V. Cable Corp. v. Public Util. Comm'rs,* 85 *N.J.* 30, 35 (1981). The statutory plan is effected by requiring companies to obtain from the Board a certificate of approval. *N.J.S.A.* 48:5A–15. A precondition for the certificate is the consent of the municipality in which the company intends to operate. *N.J.S.A.* 48:5A–22.

*N.J.S.A.* 48:5A–30(a) empowers the municipality to require the company to pay a franchise fee equal to 2% of the gross revenues derived from services provided within its borders. The statute states that the franchisee must file a verified statement with the chief fiscal officer of the municipality "showing the gross receipts from such charges" and must pay the 2% fee "as a yearly franchise revenue for the use of the streets." *N.J.S.A.* 48:5A–30(a). This revenue is to be "in lieu of all other franchise taxes and municipal license fees." *Ibid.* *N.J.S.A.* 48:5A–30(c) provides that a municipality may petition

the Board for permission to charge an annual fee greater than 2% of the franchisee's gross revenues derived from services within its territory. In that event, a hearing is to be conducted. Under the statute, the Board may grant the petition and allow a franchise fee greater than that otherwise prescribed if it "is satisfied that [such action] is warranted by the expenses to the municipality with respect to the regulation or supervision within its territory of cable television, or any other expenses caused by the existence and operation" of such services.

This appeal presents two principal questions. Initially, at issue is whether the Board properly denied the Township's petition to impose a franchise fee equal to 5% of Storer's gross revenues derived from the latter's services in the municipality. The second question is whether the imposition upon the franchisee of road opening permit fees by the Township pursuant to its municipal ordinance constitutes a violation of *N.J.S.A.* 48:5A–30(a).

We need not recount the protracted and complex procedural history relating to this case. Suffice it to say that extensive hearings were conducted with respect to both of the issues presented. The salient facts are not disputed and are essentially a matter of public record. On March 27, 1979 the Township adopted an ordinance consenting to operation of a cable television system by Monmouth Cablevision, Inc. (Monmouth). *See N.J.S.A.* 48:5A–22. The ordinance provided that Monmouth would pay the Township a yearly franchise fee equal to 5% of the company's revenues derived from its services in the municipality. Shortly thereafter, Monmouth filed a petition with the Board in which it sought a certificate of approval. *See N.J.S.A.* 48:5A–15. On August 3, 1979 the Board granted Monmouth's petition, but conditioned the certificate of approval upon the Township's agreement to limit its franchise fee to 2% of Monmouth's revenues in the municipality. The Township's request for a higher fee was referred to the Office of Administrative Law.

While the matter was pending, Monmouth was sold to Storer. In 1983, it came to the attention of the Office of Cable Television (Office) that the Township was exacting road opening permit fees from Storer. Under its ordinance, the Township charged fees in accordance with a graduated scale for the right to excavate municipal roads. The regulatory officer of the Office of Cable Television advised the Township that imposition of road opening permit fees was prohibited by *N.J.S.A.* 48:5A–30(a), and directed it to suspend the practice immediately. On December 13, 1983 the Township filed a petition to review the regulatory officer's directive. The matter was referred to the Office of Administrative Law.

The petitions were consolidated for the purpose of additional hearings. On September 19, 1984 the administrative law judge issued her initial decision. She recommended that the Board permit the Township to impose an annual franchise fee equal to 2½% of the revenues derived by Storer from its services in the municipality. Her conclusion was predicated in part upon her finding that the Township was "unique" because of the "level of services offered to residents" and the "extraordinary degree of citizen participation." She also cited the large size of the Township and its considerable regulatory expenses relating to resolution of citizen complaints against utilities. In that respect, the judge observed that the revenues derived from the 2% franchise fee were sufficient to satisfy all "out-of-pocket" expenses pertaining to regulation and supervision of cable television services in the municipality. Although ambiguously phrased, she apparently concluded that the Township was entitled to recover additional funds for use of its streets. The judge also decided that the Township was not barred by *N.J. S.A.* 48:5A–30(a) from charging road opening permit fees.

The Board rejected the judge's initial decision and recommendations. In its written determination, the Board found that the Township's out-of-pocket expenses pertaining to the regulation of cable television "could not have exceeded $34,500." The Board also noted that most of these costs were not of a

recurring nature since they related to the initial construction and start-up operations of the cable television system. Since the Township had derived $34,985 from franchise revenues through 1983, the municipality's expenses pertaining to regulation and supervision were said to have been fully recovered. Moreover, the Board found that regulatory costs would diminish during the remaining period of the franchise while the revenues obtained from Storer would probably increase. Hence, the Township would inevitably receive considerable profit in return for Storer's use of the streets.

The Board also adopted the position that the Township was prohibited by *N.J.S.A.* 48:5A–30(a) from imposing road opening permit fees on the cable television franchisee. The Board determined that the franchise fees authorized by *N.J.S.A.* 48:5A–30(a) were in lieu of all other municipal license fees. The Board concluded that the road opening permit fees charged by the Township constituted license fees and were thus barred by *N.J.S.A.* 48:5A–30(a).

We agree with the Board's determination and affirm.

I

Initially, we are entirely satisfied that the Board's findings of fact concerning the Township's regulatory and supervisory expenses could reasonably have been reached on sufficient credible evidence present in the record. *Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973); *Close v. Kordulak Bros.,* 44 *N.J.* 589, 599 (1965). *Cf. Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 484 (1974). We note in that regard that the evidence presented by the Township concerning its need to impose a 5% franchise fee was both imprecise and highly conclusory. In any event, the Board utilized the Township's expense figures in arriving at its conclusion that all of the municipality's out-of-pocket costs relating to its regulation and supervision of cable television services would be fully recovered by imposition of the 2% franchise fee. In a similar

vein, it is abundantly clear, as the Board found, that the Township will ultimately derive a substantial profit during the remainder of the period of the franchise by utilization of the 2% rate prescribed by *N.J.S.A.* 48:5A–30(a). In short, we perceive no sound basis to disturb the Board's factual findings or legal conclusions. *See Campbell v. Civil Service Dep't,* 39 *N.J.* 556, 562 (1963); *In re Suspension of License of Silberman,* 169 *N.J. Super.* 243, 255 (App.Div.1979), aff'd 84 *N.J.* 303 (1980).

■ Further, we are in complete accord with the Board's construction of *N.J.S.A.* 48:5A–30(c). As noted previously, the administrative law judge apparently drew a distinction between Storer's duty to compensate the municipality "for use of its streets" and its obligation to satisfy the Township's "out-of-pocket" regulatory expenses. The judge seemed to suggest that the 2% franchise fee authorized by *N.J.S.A.* 48:5A–30(a) was designed to compensate the municipality for the right to conduct the cable television business within its territory, while the right to petition for a greater rate under *N.J.S.A.* 48:5A–30(c) was intended to satisfy the Township's out-of-pocket regulatory expenses. The Board found no support for such an attenuated and wayward interpretation of the statute. Nor do we.

The legislative history underlying enactment of the statutory scheme clearly discloses that the franchise fee was not intended to serve as a source of general revenue funds. The Act was adopted by our Legislature in accordance with the recommendation of the Cable Television Study Commission. In discussing the proposed legislation, the Commission stated as follows:

The Commission agrees with the Federal Communications Commission that revenues derived from CATV operators should not be used as an additional source of revenue for the municipality. The municipality should have its costs covered by the tax on gross service revenue, but this should not be a source of general revenue funds. Generally, municipalities have accepted a percentage of the gross operating revenues of a company. In some instances, however, the municipality has established minimum payments. The Commission finds that minimum payments are unfair and undesirable to both the CATV operator and the municipality. The Commission believes that a two percent limit should be

placed on the municipality's tax, subject to two conditions: (1) *that municipalities which can show that supervision of local CATV actually costs them more than that should be able to raise the charge accordingly,* and (2) that companies which are already paying more, and would thus reap a "windfall" from reduction to 2%, be required to apply the difference to reducing rates or improving service.... (emphasis added). *State of New Jersey CATV Study Comm'n, Report to the Governor and Legislature* (pursuant to H.R. Con. Res. 2041 of 1971) p. 143 (1972).

The Commission's statement makes it abundantly clear that the 2% franchise fee was intended to cover all of the municipality's costs attributable to its regulatory and supervisory responsibilities and that a greater rate could be imposed only in the event that such expenses exceed the revenue derived therefrom.

Beyond this, the statutory language is clear and unambiguous. By its very terms, the statute provides that a request for franchise fees in excess of 2% should be granted only if the Board is satisfied that the municipality's regulatory and supervisory expenses warrant such a deviation from the rate prescribed by *N.J.S.A.* 48:5A–30(a). The Board's interpretation of *N.J.S.A.* 48:5A–30(c) fully comports with the legislative design and the plain meaning of the statutory language.

We are entirely unpersuaded by the Township's argument that Storer is bound by the 5% franchise fee adopted as part of the municipality's ordinance granting the company consent to operate within its territory. It is suggested that the Board was in some way bound by the agreement between Monmouth and the Township, and that deviation from the municipal consent served to subvert the public bidding process as it related to cable television. More specifically, the Township argues that Monmouth eliminated other bidders for the franchise by agreeing to a 5% fee. The Board's decision altering the premise upon which the franchise was awarded is, thus, said to have undermined the initial competition for the cable television territorial rights.

We disagree. *N.J.S.A.* 48:5A–25 states in no uncertain terms that a municipal consent must "conform in form and substance to all requirements of [the] Act." *N.J.S.A.* 48:5A–30(c) provides that "[a] municipal consent setting [a franchise]

fee in excess of [2%] ... shall be deemed to constitute ... a petition" for permission to charge a yearly fee exceeding that prescribed. Thus, a municipal consent establishing a fee greater than 2% is no more than a petition to the Board for approval of a higher amount pursuant to *N.J.S.A.* 48:5A–30(c). In sum, the Township was wholly without authority to compel any prospective franchisee to agree to anything other than a 2% fee except upon the condition of subsequent Board approval under *N.J.S.A.* 48:5A–30(c).

## II

■ We also agree with the Board's determination that the Township was foreclosed by *N.J.S.A.* 48:5A–30(a) from exacting road opening permit fees from the cable television franchisee. That statute provides that the franchise fee is to be paid to the municipality "in lieu of all other franchise taxes and municipal license fees." The principal thrust of the Township's argument is that the only license fees that are barred by *N.J.S.A.* 48:5A–30(a) are those relating to "periodic or yearly" recurring charges for the exercise of a franchise to operate a cable television system in the municipality.

■■ We find no support for such a narrow construction of the statutory language. At the outset, we note that the Office of Cable Television has consistently construed *N.J.S.A.* 48:5A–30(a) as precluding municipal imposition of road opening permit fees upon cable television franchises. Of course, we are in no sense bound by the agency's interpretation of the statute. *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 561 (1976); *Safeway Trails, Inc. v. Furman,* 41 *N.J.* 467, 483 (1964), *cert.* den. 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.*2d 84 (1964); *Kingsley v. Hawthorne Fabrics, Inc.,* 41 *N.J.* 521, 528 (1964). Nevertheless, the Office's construction is entitled to considerable weight and substantial deference, particularly where, as here, its interpretation comports with the clearly expressed legislative design. *See, e.g., Pringle v. N.J. Dept. of Civil Service,* 45 *N.J.* 329, 332–333 (1965); *State v. LeVien,* 44 *N.J.* 323, 330 (1965);

*Lane v. Holderman,* 23 *N.J.* 304, 322 (1957); *Merchantville Bd. of Ed. v. Pennsauken Bd. of Ed.,* 204 *N.J.Super.* 508, 512 (App.Div.1985).

■ Here, the Office's interpretation is supported by the "ordinary and well-understood meaning" of the statutory language. *Service Armament Co. v. Hyland, supra,* 70 *N.J.* at 556. As a general rule, the term "license fee" refers to any charge imposed by a municipality to defray the cost and expense of performance of its regulatory authority. *See, e.g., Daniels v. Point Pleasant,* 23 *N.J.* 357, 361–362 (1957); *Bellington v. East Windsor Tp.,* 17 *N.J.* 558, 564 (1955); *Automatic Merchandising Council of New Jersey v. Edison Tp.,* 204 *N.J.Super.* 395, 399–400 (App.Div.1985). *Belleville Chamber of Commerce v. Belleville,* 93 *N.J.Super.* 392, 398 (App.Div. 1967). Clearly, road opening permit fees fall within that general category.

■ We reject the Township's argument that cable television franchisees are obliged to pay road opening permit fees by virtue of *N.J.S.A.* 40:67–1(c). This statute authorizes municipalities to "[p]rescribe the time, manner . . . and terms upon which persons shall exercise any privilege granted to them in the use of any street, highway, alley or public place, or in digging up the same for laying down rails, pipes, conduits, or for any other purpose. . . ." *N.J.S.A.* 40:67–1(c). That legislative grant, which is of some vintage, has been construed as authorizing municipal imposition of road opening permit fees. *See Cook v. North Bergen,* 72 *N.J.L.* 119, 122 (Sup.Ct.1905), aff'd 73 *N.J.L.* 818 (E. & A.1906). This much conceded, it is well established that a "specific statutory provision dealing with a particular subject prevails over a general statute on the same subject." *Zon. Bd. of Adj. v. Service Elec. Cable T.V.,* 198 *N.J.Super.* 370, 381 (App.Div.1985). *See also Graziano v. Montville Tp.,* 162 *N.J.Super.* 552, 564 (App.Div.1978), certif. den. 79 *N.J.* 462 (1978). We are satisfied that *N.J.S.A.* 48:5A–30(a), which specifically concerns the regulation of cable television franchises, was intended to bar a municipality from

exacting road opening permits fees from cable television operators.

We note that the statutory bar provided by *N.J.S.A.* 48:5A–30(a) does not compel the Township to bear the expense of regulating and supervising the franchisee's excavation of roads incident to its operation of a cable television system. Such regulatory costs are defrayed by the franchise fee required by *N.J.S.A.* 48:5A–30(a). In the event that the revenues so derived are insufficient to satisfy that purpose, the Township may petition for a higher rate pursuant to *N.J.S.A.* 48:5A–30(c). Thus, the citizens of the municipality are not required to subsidize those who choose to enjoy the franchisee's services.

### III

■ Lastly, we find no merit in the Township's argument that the Office of Cable Television should not have been permitted to directly participate in the proceedings and advocate a particular position. The Office properly sought to compel compliance with the statutory scheme. *See N.J.S.A.* 48:5A–9. We perceive no error in that regard. *See Public Advocate Dep't v. Public Util. Bd.,* 189 *N.J.Super.* 491, 518–519 (App.Div.1983).

Accordingly, the Board's determination is affirmed in all respects.