TRAILWAYS, INC., A DELAWARE CORPORATION, PLAINTIFF, v. CITY OF ATLANTIC CITY, BOARD OF COMMISSIONERS OF THE CITY OF ATLANTIC CITY, DEPARTMENT OF REVENUE AND FINANCE OF THE CITY OF ATLANTIC CITY, DIRECTOR OF REVENUE AND FINANCE OF THE CITY OF ATLANTIC CITY, DEFENDANTS, AND MANHATTAN TRANSIT CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF, v. CITY OF ATLANTIC CITY, BOARD OF COMMISSIONERS OF THE CITY OF ATLANTIC CITY, DEPARTMENT OF REVENUE AND FINANCE OF THE CITY OF ATLANTIC CITY, DIRECTOR OF REVENUE AND FINANCE OF THE CITY OF ATLANTIC CITY, DEFENDANTS.

Superior Court of New Jersey
Law Division Atlantic County

Decided December 3, 1980.

*Joseph T. Wilkins*, for plaintiffs.

*Matthew H. Powals*, City Solicitor, for defendants.

*Edward N. Fitzpatrick*, cocounsel for defendants (*Clapp & Eisenberg*, attorneys).

GRUCCIO, A. J. S. C.

Plaintiffs bring a consolidated action in lieu of prerogative writs to invalidate two Atlantic City ordinances imposing fees upon charter buses and special operations buses. While plaintiffs' motion for summary judgment was pending, the city replaced the challenged ordinances with two ordinances of similar language, but imposing higher fees. Plaintiffs amended their complaints to include the same challenged to the replaced ordinances. This court grants plaintiffs' motion for summary judgment and finds that Atlantic City Ordinances 68 and 72 of 1980, and any prior similar ordinances in effect since December 31, 1972, are *ultra vires* in part and contravene *N.J.S.A.* 48:4–14.1 in part.

On October 29, 1979 plaintiff Trailways, Inc. (Trailways), a Delaware corporation doing business in New Jersey, filed a complaint in lieu of prerogative writs (*Docket* L–10433–79 P.W.)

pursuant to *R.* 4:69 *et seq.* against the City of Atlantic City, its Board of Commissioners, its Department of Revenue and Finance and its Director of Revenue and Finance. Trailways demands judgment in three respects. Initially, the complaint seeks a declaration that Atlantic City Ordinances 23 and 54 of 1978, and any prior similar ordinances in effect since December 31, 1972, are invalid because said ordinances contravene *N.J.S.A* 48:4–14.1. Ordinance 23 of 1978, adopted on April 27, 1978, provided, among other things, that every charter bus entering Atlantic City pay a $50 fee. Ordinance 54 of 1978 adopted on August 17, 1978, provided, among other things, that prior to commencing its operation into the city, any special bus service must have obtained a permit costing $50 and be assessed a fee of 75¢ per passenger brought into the city. Secondly, Trailways seeks reimbursement for any and all taxes and fees paid pursuant to the said ordinances, with interest. Thirdly, Trailways demands judgment ordering defendants to cease and desist from collecting, or attempting to collect, the taxes and fees required by said ordinances.

On November 19, 1979 plaintiff Manhattan Transit Co., Inc. (Manhattan), a New Jersey corporation, filed a similar complaint in lieu of prerogative writs (*Docket* L–14103–79 P.W.) pursuant to *R.* 4:69 *et seq.* against the same defendants, demanding judgment in the same three respects. On December 3, 1979 defendants filed an answer to Trailways' complaint, asserting as four separate defenses that the ordinances referred to are a valid exercise of a municipality's police powers; that the provisions of *N.J.S.A.* 48:4–14.1 do not apply to special or charter buses; that Trailways has not exhausted its administrative remedies, and that each defendant is entitled to governmental immunity. In addition, defendants' answer included a counterclaim for bills due and owing pursuant to Atlantic City Ordinances 23 and 54 of 1978, and demanded compensatory damages with interest. On December 7, 1979 Trailways filed a reply to the four separate defenses and an answer to the counterclaim. Trailways asserted that the said ordinances are invalid because

they contravene *N.J.S.A.* 48:4–14.1; that the provisions of *N.J. S.A.* 48:4–14.1 do not except special or charter buses from its applications; that there is no administrative tribunal available to determine this matter, and that the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.*, does not apply to this action. Trailways responded to defendants' counterclaim by way of general denial.

On December 7, 1979 defendants filed an answer to plaintiff Manhattan's complaint, an answer similar to the one filed in response to Trailways' complaint. On December 10, 1979 Manhattan filed a reply to the four separate defenses raised in defendants' answer similar to the reply in response to defendants' answer to Trailways' complaint.

On April 3, 1980 Manhattan and Trailways sought consolidation and summary judgment, but a hearing was continued at defendants' request due to personnel changes in the Atlantic City Solicitor's Office.

Between April 13 and 18, 1980 defendants filed a responding brief asserting the necessity of discovery prior to a hearing on summary judgment. On April 18, 1980 this court allowed discovery until May 3, 1980 and continued the summary judgment motion.

On May 10, 1980 defendants tentatively scheduled depositions of city officials, which to date have never been taken, nor has discovery been sought in any respect.

On June 11, 1980 defendants represented that they were retaining co-counsel in this matter, and defendants were thus granted an indefinite postponement.

On July 31, 1980 defendant Board of Commissioners of Atlantic City adopted Ordinances 72 (which repeals the subject Ordinance 54 of 1978 and provides for increased fees for special buses entering Atlantic City, including fixed fees for permits, and a 90¢ per passenger head tax) and 68 of 1980 (which repeals subject Ordinance 23 of 1978 and provides for increased fees for charter buses entering Atlantic City).

On September 18, 1980 this court granted the motion for consolidation and entertained oral argument on the motion for summary judgment.

In *Judson v. People's Bank and Trust Co. of Westfield*, 17 *N.J.* 67 (1954), the court established the scope of the summary judgment procedure, holding in part, (at 73) that "the role of the judge in that procedure is to determine whether there is a genuine issue as to material fact, but not to decide the issue if he finds it to exist." See, also *R.* 4:46–2. In noting that the moving party must clearly sustain its burden "to exclude any reasonable doubt as to the existence of any genuine issue of material" or show that "palpably" no such issue exists, the court further held that "[a]ll inferences of doubt are drawn against the movant in favor of the opponent of the motion" and that the issues of credibility are to be reserved for the trier of fact. *Id.* at 74–75. Applying the standard to the present case, this court finds that there are no genuine issues as to material fact.

Plaintiffs Trailways and Manhattan are major national carriers of passengers by bus. For years Trailways and Manhattan have carried bus patrons to Atlantic City, an activity presently including three basic modes of service. The first mode, not the subject of this litigation, is by regularly scheduled inter-city bus passenger and package service between termini in other cities and the Atlantic City Municipal Bus Terminal. This service is not taxed by Atlantic City. The second mode is by the operation of Special Operations Bus Service, whereby patrons and other cities may purchase individual tickets for transportation to and from special designations within Atlantic City, usually the casinos, which tickets may include meals, lodging, entertainment or other amenities. This service is regulated by Atlantic City under Municipal Ordinance 72 of 1978. The third mode of service provided by plaintiffs is the operation of charter bus service, whereby group patrons and other cities charter Trailways and Manhattan buses for transportation to and from Atlantic City, including trips to hotels, casinos, Convention Hall, and such other designations as may be desired by the chartering

groups. This service is regulated by Atlantic City under Ordinance 68 of 1980. Trailways and Manhattan have secured such permits and have paid substantial sums to Atlantic City for the fees imposed under Ordinances 68 and 72 of 1980. Whether or not the bus companies elect to park on the municipal lot provided for special operations and chartered buses at Huron and Tennessee Avenues in Atlantic City, the regulatory fee imposed includes such a parking charge. Although the precise amounts paid by plaintiffs under the cited ordinances remain to be precisely determined, there is no dispute that such amounts can readily be determined in event that a judgment issues declaring the fees invalid and unlawful. In light of these facts it remains for this court to make findings of law.

The gravamen of the bus companys' complaints is that Atlantic City, by enacting Ordinances 68 and 72 of 1980 is engaging in the practice of charging a "franchise tax" or a "municipal license fee," in contravention of *N.J.S.A.* 48:4–14.1. However, Atlantic City contends that the contested ordinances are neither a "franchise tax" nor a "municipal license fee" in contravention of *N.J.S.A.* 48:4–14.1, but a "municipal charge" countenanced under *N.J.S.A.* 40:60–25.30 to defer the costs of a necessary regulatory scheme and parking facility. Because the contested ordinances operate in the exercise of municipal police powers for the guarantee of the health, safety and welfare of the residents and visitors of the city, Atlantic City maintains that the said ordinances are valid and comply with municipal obligations in this regard.

In rebuttal, the bus companies aver that if the exactions imposed by the city are cognizable under *N.J.S.A.* 40:60–25.30, and the bus companies are forced to use the municipal terminal facilities whether or not they have their own terminal within the city or elect to park outside the city, Atlantic City is operating a monopoly in contravention of federal antitrust laws. In addition, if the bus companies do not elect to park in the municipal terminal, the exaction becomes either a "license fee" or "fran-

chise tax" to use the city streets both prohibited by *N.J.S.A.* 48:4–14.1.

Atlantic City defends its ordinances by asserting that the federal antitrust laws do not affect the municipality in the exercise of its police powers, or in its health, safety and welfare regulations. The city posits that its regulatory scheme does not tax the use of the streets, but rather defers the charges necessary for parking and other regulatory services.

▌ At the outset, it is appropriate to consider plaintiffs' contention that the Public Utilities Commission preempts municipal regulation and taxation of charter and special operations buses. A municipal corporation, being a government of enumerated powers, has no inherent power to adopt ordinances or regulations except those affirmatively delineated by the Legislature, and must act within its delegated authority. *Tonsorial Inc. v. Union City*, 115 *N.J.Super.* 33, 38 (Law Div.1971).

▌ A valid state statute or regulation may expressly or impliedly occupy the entire field regulated so as to preempt even nonconflicting municipal regulations of the same general subject. Whether a state statute supersedes a municipal ordinance is primarily determined from the intent of the Legislature. *N.J.S.A.* 48:4–1.2 specifically provides that "the board [of public utility commissioners] shall have *full* jurisdiction over autobuses" (emphasis supplied). *N.J.S.A.* 48:2–13 provides in pertinent part:

> The board shall have *general* supervision and regulation of and jurisdiction and control over all public utilities as hereinafter in this section defined and their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this Title.
>
> The term "public utility" shall include ... *charter bus operation, special bus operation....* [Emphasis supplied]

While this statutory language does not explicitly provide that the State should maintain *exclusive* supervision and regulation over charter and special operations buses, two key factors of comprehensiveness of the state regulatory scheme and the existence of corresponding agency to administer that scheme will be

considered to determine if implied preemption is required. No single factor will be decisive.

The more a state statutory scheme leaves uncovered, the less likely is a finding of implied preemption. Chapter 4 of *Title* 48 of *N.J.S.A.*, entitled "Autobuses," includes seven articles which address, among other matters, municipal consent to operation, exemption from insurance, franchise taxes, interstate buses and insurance provision regarding motor vehicles carrying passengers for hire, with and without municipal consent.

█ The statutes governing public utilities reflect the legislative recognition that "public interest in proper regulation of public utilities transcends municipal or county lines, and that a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service throughout the State." *Bergen Cty. v. Public Utilities Dep't*, 117 *N.J.Super.* 304, 312 (App.Div.1971), citing *In re Public Service Electric and Gas Co.*, 35 *N.J.* at 358, 371 (1961). *N.J.S.A.* 48:2–1 creates the Department of Public Utilities and the Board of Public Utility Commissioners to enforce the state public utilities laws. The Board of Public Utility Commissioners was intended by the Legislature to have the widest range of regulatory power over public utilities, and the provisions of the statute governing public utilities are to be construed liberally. *Bergen Cty. v. Public Utilities Dep't, supra* at 312.

While these key factors tend to establish the pervasiveness of the state regulatory scheme over charter and special operations buses, defendants contend that the P. U. C. does not preempt municipal regulation of charter and special operations buses in light of *Port Auth. Trans-Hudson Corp. v. Baum Bus Co.*, 156 *N.J.Super.* 585, aff'd 156 *N.J.Super.* 578 (App.Div.1978). The trial court held that Jersey City was authorized to eliminate bus stops for the purpose of achieving a central transportation facility, without any review by P. U. C. Jersey City possessed requisite statutory authorization to designate bus stops. Pre-

sumably, defendants herein argue that they possess analogous statutory authorization to impose municipal charges on charter and special operations buses pursuant to *N.J.S.A.* 40:60–25.30. Defendants' reliance on *Port Auth. Trans-Hudson Corp.* for the proposition that preemption does not obtain in the instant case fails because, as will be developed hereinafter, *N.J.S.A.* 40:60–25.30 does not apply to plaintiffs as alleged.

Therefore, the comprehensiveness of the state regulatory scheme regarding autobuses and the creation of the P. U. C. and its board to enforce that regulatory scheme supports a finding of implied, if not express, preemption.

Such a finding does not intimate that the Legislature does not recognize any legitimate local interests in the regulation of charter or special operations buses. Where the Legislature has clearly declared its policy that the subject matter is one intended to be left to local regulation, courts ordinarily will hold the local regulation valid even where there is some state regulation in existence. Municipal legislation or activity rarely presents any difficulty in terms of the scope of the police power, since courts ordinarily will not review the reasonableness of municipal legislative objectives. *Tillberg v. Kearny Tp.*, 103 *N.J.Super.* 324 (Law Div.1968). The police power of bus regulation, including their use of city streets, is vested in the State and may be exercised in the absence of constitutional or statutory prohibition. Moreover, the power of regulation conferred on municipalities may be withdrawn by the State. Accordingly, if Atlantic City possesses municipal police power to regulate buses, such power exists by delegation from the State and is held by the municipality only by express grant.

In the instant case the bus companies readily concede that Atlantic City can enact ordinances providing for limited regulation of buses operating wholly within the municipal limits. *N.J.S.A.* 48:4–2.18 specifically provides that "a municipality may, pursuant to standards established by the public utilities commission, enact ordinances regulating the scheduling, safety

and fitness for passenger use of autobuses operating wholly and exclusively within the limits of the municipality." The Assembly Transportation and Communications Committee Statement specifically enunciates the rationale for such municipal regulation.

> This bill returns to the municipalities, if they choose, some degree of regulation over buses operating wholly within a municipal boundary. The Board of Public Utility Commissioners would retain ultimate control of such local bus operation in order to assure uniformity.

> This bill provides that a municipality may, pursuant to standards established by the board, enact ordinances regulating the scheduling, safety and fitness for passenger use of buses operating wholly and exclusively within the limits of the municipality. A municipality may enact an ordinance providing a fine of up to $100.00 for each violation of provisions regulating of such scheduling, safety and fitness for passenger use of such buses.

> The bill also provides that a municipality may not prohibit the operation of any bus within the municipality unless the continued operation of said bus would constitute a danger to the health, safety and well-being of the general public. Furthermore, the bill states that any owner of a bus who has been prohibited from operating a route by a municipality pursuant to this act, may appeal the decision of the municipality to the board.

> The purpose of this bill is to improve enforcement of those provisions designed to promote the interests and safety of bus passengers by providing a degree of local control over local bus operation. The local authorities are on the scene every day and can best provide protection for their residents. This is especially true in minor but important matters, such as the cleanliness of the buses and maintenance of a proper running schedule.

The usual question is not whether the municipal ordinance is within the permissible objectives of the municipal police power, but whether it contravenes the limits on that power. In the instant case, the bus companies contend that the contested ordinances contravene the limits of Atlantic City's municipal police power in two respects. First, the bus companies assert that the contested ordinances mandate that they resubmit themselves to licensure, contrary to the provisions of *N.J.S.A.* 40:52–1. Second, the bus companies maintain that the fee imposed by these ordinances is in part either a license fee or franchise tax in contravention of *N.J.S.A.* 48:4–14.1.

Section 7 of Ordinance 68 of 1980 provides in pertinent part that

Any Chartered Bus entering the City of Atlantic City must have obtained, prior to entering said City, a Permit from the Director of Public Works of said City, or his representative, for which the said fee of $55.00 shall be paid to the City prior to the issuance of said Permit for each Charter Bus entering the City of Atlantic City. The Application for said Permit must be made in writing. . . .

## Section 10 of the same ordinance provides that

All applications for Permits must be made to the Director of Public Works of the City of Atlantic City or his designated representative, at least fourteen (14) calendar days prior to the date that the Charter Bus Operator intends to arrive in Atlantic City and all Permits by said Director of Public Works, or his representative, must be issued on said Application at least seven (7) days prior to the scheduled date of the arrival of said Charter Bus.

## Section 3 of Ordinance 72 of 1980 provides in pertinent part that

Any Special Bus Service, prior to commencing its operation into the City, must have obtained the necessary permit(s) from the Director of Public Works of the City of Atlantic City, or his representative.

Application for the permit(s) must be made in writing and accompanied by a check for $2500.00. . .

As an alternative, a Special Bus Service may purchase an individual $55.00 permit for each individual trip into the City of Atlantic City. . . .

## Section 6 of the said ordinance provides that "the aforementioned Permits are to be effective for a period of ONE (1) YEAR. . . ."

The bus companies maintain that these provisions require them to resubmit themselves to licensure in contravention of *N.J.S.A.* 40:52–1, which provides in part that municipalities may make and enforce ordinances to license and regulate autobuses, but precludes municipalities from requiring licensure of any person holding a license or certificate issued by any department, board, commission or other agency of the State. Since defendants herein have not denied that plaintiff bus companies are licensed both under the federal Interstate Commerce Commission licensure system, which preempts under the Federal Constitution, and the State Communication Commission licensure system, this court must assume such allegation to be true. The provision of *N.J.S.A.* 40:52–1 to the effect that nothing in that chapter should authorize the governing body of a municipality to license or regulate a person holding a license issued by the State is included to prevent double licensing and to acknowledge the

State's right of preemption in certain fields. *Boulevard Apartments, Inc. v. Hasbrouck Heights*, 111 *N.J.Super.* 408 (Law Div.1970). Since plaintiff bus companies are already federally- and state-licensed, Atlantic City is precluded from resubmitting them to licensure pursuant to *N.J.S.A.* 40:52–1 and *Boulevard Apartments, Inc., supra.* It remains for this court to consider whether the fees imposed by these ordinances are in part either a municipal license fee or franchise tax in contravention of *N.J.S.A.* 48:4–14.1.

■ The statutory language of *N.J.S.A.* 48:4–14.1 also supports plaintiffs' position on preemption. This statute provides that "Except as provided in *R.S.* 48:16–25 no municipality shall assess or impose any franchise tax or municipal license fee upon any person owning or operating an autobus in such municipality." The sponsor's statement articulates the legislative concern in this regard.

> The purpose of this bill is to assist bus companies which provide regular route bus service to New Jersey residents. Many of these companies have suffered serious financial losses in the past few years. The potential for loss has forced these companies to apply for rate increases and curtailment of present services.
>
> Mindful that increased rates and curtailment of service will only worsen the financial picture for regular route bus companies because it will force bus patrons to seek other transportation, this bill revises and repeals parts of the statutory law to reduce the taxes and other fees which these companies pay, thereby relieving part of financial burden of these public transportation oriented companies.

In order to ascertain whether the contested exactions constitute either a licensing fee for regulation or a tax for revenue in contravention of *N.J.S.A.* 48:4–14.1, this court will first consider the nature and the purpose of the ordinances imposing the exactions.

■ A declared purpose to regulate arguably tends to establish the exaction as a regulatory license fee. Ordinance 68 of 1980 provides in pertinent part that it is

> An ordinance *regulating* the operation of charter autobuses within the City of Atlantic City: providing for the payment of a license or fee to *regulate* said charter autobuses: providing for the granting of permits to special destinations: providing for operating charter bus terminals and the parking of said charter

autobuses: *regulating* and prohibiting the use of certain streets in Atlantic City by said charter autobuses; and providing penalties for the violation thereof, and repealing all ordinances or parts of ordinances inconsistent herewith specifically, Ordinance No. 23 of 1978. [Emphasis supplied]

Similarly, Ordinance 72 of 1980 is "an ordinance *regulating* the operation of special autobuses within Atlantic City." In the *per curiam* opinion of *Werner Mach. Co. v. Taxation Div. Director*, 17 *N.J.* 121, aff'd 350 *U.S.* 192, 76 *S.Ct.* 534, 100 *L.Ed.* 634 (1956), the United States Supreme Court unanimously upheld the validity of a New Jersey tax statute as applied to appellant. In so holding, the Supreme Court cautioned that our Supreme Court's characterization of the state exaction as a franchise tax was not conclusive upon it in determining whether the tax was valid under federal law. By extending this finding to the instant question of the referable character of two municipal ordinances, the names by which the exactions are described in the ordinances are not dispositive in determining whether the exaction is a "franchise tax" or a "municipal license fee." The character of the exactions must be determined by their incidents. *Dolson v. Kentucky Distilleries & Warehouse Co.*, 255 *U.S.* 288, 292, 41 *S.Ct.* 272, 274, 65 *L.Ed.* 638, 645 (1920).

The distinction between a local legislative act primarily regulative in the exercise of the police power to serve the common need, and the use of delegated power to tax for revenue, is that in the former the license fee is ordinarily the means of defraying the expense fairly attributable to the regulative process while the latter is confined by constitutional limitations, the terms of the grant itself, and the rule of reason and good discretion. *Bellington v. East Windsor Tp.*, 17 *N.J.* 558, 564 (1955). The powers to license and regulate under the police power and the power to raise under the general power to tax may be "unitedly exercised." *Id.* at 565. This court must ascertain whether the exactions derive from the regulatory power or taxing power of municipalities.

While the bus companies have convincingly demonstrated that Atlantic City cannot resubmit them to licensure in light of the

state licensure system, the companies have correspondingly demonstrated that Atlantic City has been preempted by the state from imposing a municipal license fee. A municipal license fee is a "license or permit fee, tax or exaction" which imposes "a charge for the privilege granted by the license or permit." 9 *McQuillin, Municipal Corporations* (3 ed.), § 26.32. Municipal license fees are used to designate impositions exacted for the exercise of various privileges, such as covering the expenses of police regulation of charter and special operations buses and the buses' use of the streets. *N.J.S.A.* 48:4–14.1 clearly prohibits any such municipal license fees. This statutory provision arguably prevents the intolerable burden which would flow from multiple municipal exactions of the same bus in contravention of express legislative intent in this regard.

Next, this court will consider whether the contested exactions are proscribed as a "franchise tax" in contravention of *N.J.S.A.* 48:4–14.1. In *Werner Machine Co. v. Director, Taxation Div., supra,* the Supreme Court held, among other things, that the Corporation Business Tax Act imposed a valid franchise tax, and defined a franchise tax as "a type of excise tax, namely a form of taxation not laid directly upon persons or property." 17 *N.J.* at 125. The *Werner* court distinguished two types of franchise taxes. The first kind are organization taxes, *i. e.,* fees imposed upon the grant of corporate powers, and secondly, excises levied periodically, usually annually, upon the franchise or privilege of corporations to do business in the state. *Id.* at 126.

In the municipal ordinances under review, the exaction imposed in Ordinance 68 appears in part to comport with the first kind of franchise tax described above, namely an organization tax imposed upon the grant of corporate powers. Section 6 of that ordinance provides that

The charge for a permit to bring a Chartered Bus into Atlantic City and to park the same on the City-owned and operated Charter Bus Lot shall be $55.00, which said charge shall include the obtaining of the Permit and the parking of the Bus upon the Charter Bus Lot for the first twenty-four (24) hours.

That part of the fee which does not constitute a parking charge, and cannot represent the expense of issuance of a license be-

cause a municipality is precluded from resubmitting the bus companies to licensure pursuant to *N.J.S.A.* 40:52–1, necessarily must be an imposition upon the corporations for the privilege of having or exercising its corporate franchise in the municipality, or for the privilege of doing business therein.

Turning to the second ordinance in question, this court is of the opinion that the exaction imposed in Ordinance 72 comports with the second type of franchise tax described by the *Werner* court, namely an excise tax levied annually upon the franchise or privilege of corporations to do business in the municipality. Section 6 of this ordinance provides that "the aforementioned Permits are to be effective for a period of ONE (1) YEAR, and shall be effective from July 1st of the year of issue until June 20th of the following year."

It was settled by *N.J.S.A.* 48:4–14.1 that the franchises of bus companies operating charter or special operations buses are illegitimate subjects of municipal taxation. This court finds that the exactions imposed upon plaintiff bus companies are imposed in part for the privilege of exercise by those corporations of corporate powers in the municipality. These franchise taxes imposed in part upon the corporations for the privilege of doing business in the municipality is based upon the potential of the corporations for doing business under the sanctions and protection of the laws of the municipality. Such an exaction is impliedly, if not expressly, prohibited by the statutory language of *N.J.S.A.* 48:4–14.1.

The exactions imposed by the contested ordinances unitedly exercise both incidents of a municipal license fee and a franchise tax. In this joint exercise, this court finds that the exactions contravene *N.J.S.A.* 48:4–14.1

It remains for this court to consider whether those parts of the exactions which represent parking charges as applied to plaintiff bus companies herein can withstand judicial scrutiny. Such parking charges are permissible as a matter of due process if they are directly related to a parking service utilized by the bus companies. In other words, there must be a "nexus" to a

demonstrable use of the parking facility which must be fairly apportioned or otherwise reasonably related to the economic benefit the bus companies derive from their municipal activities. The bus companies have clearly demonstrated that they do not use this municipal terminal. Due process commands that use of such a terminal is a condition precedent to payment of such a parking charge. Atlantic City's provision of a bus terminal for charter and special operations buses aims at a legitimate municipal safety objective, namely, the elimination of parking congestion. However, that objective can readily be achieved by less drastic means, which have been persistently articulated by the bus companies. Those companies should be afforded the opportunity of securing their own parking arrangements on lots within the city, or afford them the election of parking outside the city. But to impose upon them a fee which in part represents a parking charge not sustained by them is untenable.

Atlantic City contends, nevertheless, that *N.J.S.A.* 40:60–25.30 authorizes the municipality to impose upon the bus companies as a municipal charge the construction costs of such an autobus terminal. The relevant statutory language provides:

> The governing body of a municipality which has established an autobus terminal and acquired, leased or set apart real property for such purposes may construct, improve, equip, maintain and operate the same or may vest jurisdiction for the construction, improvement, equipment, maintenance and operation thereof, in any suitable officer, board or body of such municipality. The expense of such construction, improvement, equipment, maintenance and operation shall be a municipal charge. The governing body of any municipality may adopt regulations and establish fees or charges for the *use* of such autobus terminal or may authorize any officer, board or body of such municipality to adopt such regulations and establish fees or charges, subject, however, to the approval of such governing body before they shall take effect. [Emphasis supplied]

"Use" again surfaces as a condition precedent to such an exaction. In *Evansville-Vanderburgh A. A. Dist. v. Delta Airlines, Inc.*, 405 *U.S.* 707, 92 *S.Ct.* 1349, 31 *L.Ed.2d* 620 (1972), a municipal fee of $1 imposed on all emplaning passengers at a municipal airport, to help defray costs of airport operations, was held valid where applied to all users, whether departing on an interstate or intrastate flight, since it was reasonably related to fiscal need and designed for the benefit of passengers taxed.

Congress, in 1973, enacted a statute overturning this case and forbidding taxes or fees on air passengers. In addressing the question the court did not think it particularly important whether the charge was imposed on the passenger himself, to be collected by the airline, or on the airline to be passed on to the passenger if it chose. More importantly, the court fashioned its holding in terms of use. Applying the holding of the *Evansville-Vanderburgh* case and the statutory language of *N.J.S.A.* 40:60-25.30 to the instant case, it is inconceivable how Atlantic City can conclude that it can exact such construction costs for its municipal terminal from nonusers.

In conclusion, this court awards judgment to the bus companies in three respects. Initially, Atlantic City Ordinance 68 and 72 of 1980, and any prior similar ordinances in effect since December 31, 1972, contravene *N.J.S.A.* 48:4-14.1 in part as articulated herein. Secondly, plaintiff bus companies should not be required to pay the contested exactions from the time of the filing of their respective complaints. Finally, defendants are ordered to cease and desist from collecting, or attempting to collect, the taxes and fees required by said ordinances from plaintiffs with the exception of any parking charges that plaintiffs may incur from the use of the municipal terminal in question.