RIMM, J.T.C.
This state tax matter involves the constitutionality of the excise tax imposed on the operation of autobuses over the highways of this State. The tax is payable to the Director, Division of Motor Vehicles in accordance with N.J.S.A. 48:4-20. There is also before the court the issue of the right to a refund if the tax is unconstitutional.
N.J.S.A. 48:4-20 in its present form as amended by L.1972, c. 211, § 2, effective December 31, 1972 provides as follows:
Every person owning or operating an autobus which is operated over any highway in this State for the purpose of carrying passengers from a point outside the State to another point outside the State, or from a point outside the State to a point within the State, or from a point within the State to a point outside the State shall pay to the Director of the Division of Motor Vehicles, as an excise for the use of such highway, Vi cent for each mile or fraction thereof such autobus shall have been operated over the highways of this State, except that no excise shall be payable for the mileage traversed in regular route passenger service provided under operating authority conferred pursuant to R.S. 48:4-3.
The term “autobus” as it is used in both N.J.S.A. 48:4-20 and 48:4-3 is defined in N.J.S.A. 48:4-1 as “any motor vehicle or *46 motorbus operated over public highways or public places in this State for the transportation of passengers for hire in intrastate business, notwithstanding that such motor vehicle or motorbus may be used in interstate commerce.”
Plaintiff is a major common carrier providing both interstate and intrastate autobus passenger service by means of regular passenger route operations and charter operations through wholly owned subsidiaries in three modes:
(a) Charter bus service, whereby a group of patrons charter or lease a bus and driver for transportation to a certain location designated by the group, for a fixed charter per trip;
(2) Special operations bus service, whereby patrons purchase individual tickets for transportation to and from a specific location designated by the common carrier, which tickets may include meals, lodging, entertainment or other amenities; and
(c) Regularly scheduled intercity bus passenger and package service.
As a common carrier, plaintiff files monthly returns with the Division of Motor Vehicles, Bureau of Motor Carriers, for payment of the excise tax. When it filed monthly reports prior to June 1979, plaintiff included the total number of miles traversed in New Jersey. The reports filed by plaintiff included miles designated as “charter miles” and miles designated as “schedule miles,” and plaintiff calculated and remitted the monthly tax due on total miles traversed in New Jersey including miles traversed in regular route passenger service pursuant to N.J.S.A. 48:4-3 although such mileage was not taxable in accordance with N.J.S.A. 48:4-20. N.J.S.A. 48:4-3 states that no bus operation engaged wholly or partly in intrastate commerce shall be allowed unless approved by the Board of Public Utility Commissioners (P.U.C.).[1] Plaintiff’s intrastate operations were provided under authority so conferred by the P.U.C. pursuant to N.J.S.A. 48:4-3, and its interstate operations were provided under au *47 thority conferred by the Interstate Commerce Commission (I.C.C.).[2]
Upon discovering that it had not excluded N.J.S.A. 48:4-3 mileage from its monthly reports, and the resulting claimed overpayment of taxes, plaintiff filed a refund claim with the Division of Taxation on November 23, 1979, seeking a refund of excise taxes paid on regular route miles for the preceding two years pursuant to the State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 et seq. The claim was filed with the Division of Taxation, Refund Section. The claim sought a refund in the amount of $55,392.64 for the period of November 1977 to June 1979. It was forwarded to the Division of Motor Vehicles by the Division of Taxation. By letter dated March 18, 1980, the chief of the Bureau of Motor Carriers of the Division of Motor Vehicles advised plaintiff that an overpayment of taxes may be used to offset future taxes in the three months following the end of the applicable tax month, but that no refund was permitted. N.J.A.C. 13:18-7.7. Subsequent correspondence resulted in a letter to plaintiff from the bureau chief dated April 3, 1980 indicating that there was no authority for the refund claimed.
Plaintiff thereupon filed a complaint with the Tax Court on June 9, 1980 seeking a refund of $55,392.64 and citing N.J.S.A. 54:48-1 et seq., 54:49-14 et seq., 48:4-1 et seq., 48:4-24 and N.J.A.C. 13:18-7.1 to 7.7 as authority for allowance of a refund. On the trial date only oral argument was presented by each party, the parties having agreed that the court should determine the facts from the statements of facts submitted by each party. There is no dispute between the parties on any essential fact. The matter is now before the court for disposition in accordance with N.J.S.A. 54:51A-13 which provides for a review of the tax in the Tax Court.
*48 In filing its claim for a refund plaintiff concedes that it is not entitled to any refund of taxes paid for “charter miles” which it refers to as “non-exempt” miles, and no claim is made relating to those miles. Plaintiff did, however, seek a full refund of taxes paid for “schedule miles”, which it refers to as “regular route exempt miles”, including in its claim both routes operated under P.U.C. authority and routes operated under I.C.C. authority for which there was no P.U.C. authority. Defendant, in turn, concedes that plaintiff is entitled to a credit, but not a refund, in accordance with N.J.A.C. 13:18-7.1 for those taxes erroneously paid pursuant to N.J.S.A. 48:4-20 on regular route intrastate miles traversed under authority from the P.U.C.
Documents submitted with plaintiff’s answers to interrogatories indicate that Safeway Trails, Inc., one of plaintiff’s wholly owned subsidiaries, operated seven routes into, through and out of New Jersey during the period for which the refund claim is made. For each of the routes Safeway Trials, Inc. held operating authority granted by the I.C.C. Safeway also held P.U.C. approval for the intrastate service provided in conjunction with the seven interstate routes. Plaintiff held the necessary P.U.C. authority whenever it provided autobus passenger service strictly between points within New Jersey. However, whenever the autobus passenger service related only to the transport of passengers between points outside this State and points within New Jersey or only between points outside this State and included no service to New Jersey points, only I.C.C. authority was obtained.
The differences between the parties may be summarized as follows:
1. Charter miles. Plaintiff concedes that such miles are taxable.
2. Scheduled miles.
a. Intrastate miles, for which there is P.U.C. authority.
i. Point to point in New Jersey as an exclusively intrastate trip.
ii. Point to point in New Jersey as part of an interstate trip.
Defendant concedes that such mileage is not taxable, but denies that plaintiff is entitled to a refund of taxes paid asserting that plaintiff is only entitled to a credit against subsequent taxes for a limited time.
*49 b. Interstate miles, for which there is I.C.C. authority.
i. From a point in New Jersey to a point outside New Jersey.
ii. From one point outside New Jersey to another point outside New Jersey with mileage traversed in New Jersey by going through the State.
Plaintiff contends that taxing such mileage is an unconstitutional burden on interstate commerce and is a denial of equal protection of the law.
The issues before the court by virtue of the positions of the parties are sharply drawn as follows:
1. Is the excise tax imposed on plaintiff on miles traversed in New Jersey an unconstitutional burden on interstate commerce?
2. If it is constitutional, how much of the tax paid on intrastate mileage must be returned to plaintiff, if any?
3. If it is unconstitutional, how much of such unconstitutional tax paid by plaintiff must be returned to plaintiff, if any?
The tax which is the subject of the taxpayer’s attack on constitutional grounds was held to be constitutional in Safeway Trails, Inc. v. Furman, 41 N.J. 467, 197 A.2d 366 (1964), app. dism. 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed.2d 84 (1964). In that case the excise tax imposed by N.J.S.A. 48:4-20 on interstate autobuses operated on the New Jersey Turnpike and Garden State Parkway was attacked as violative of the Commerce Clause of the Federal Constitution, U.S. Const., Art. I, § 8, cl. 3, and the Equal Protection Clause of the Fourteenth Amendment, U.S. Const., Amend. XIV, § 1.
At the relevant time, N.J.S.A. 48:4-20 read:
Every person owning or operating an autobus which is operated over any highway in this State for the purpose of carrying passengers from a point outside the State to another point outside the State, or from a point outside the State to a point within the State, or from a point within the State to a point outside the State shall pay to the Director of the Division of Motor Vehicles, as an exeise for the use of such highway, % cent for each mile or fraction thereof such autobus shall have been operated over the highways of this State, except that no excise shall be payable for the mileage traversed in any municipality to which such owner or operator has paid a monthly franchise tax for the use of its streets under the provisions of section 48:4-14 of this Title.
The court pointed out that this tax was originally enacted by L.1927, c. 184. The enactment was accompanied by the following statement of purpose:
*50 This bill imposes an excise on the use of highways of the State by motor vehicles used for carrying passengers or property for hire in interstate commerce. The purpose is to compel such vehicles to bear their just share of taxation. At the present time such vehicles pay nothing to the State of New Jersey, except the registration fees provided for under the Motor Vehicle Act, while other vehicles operating wholly within the State are subject to taxation. The right to impose such a tax on such vehicles engaged in interstate commerce has been recently upheld by the Federal courts. [Id. at 478, 197 A.2d 366]
The court then said:
It is apparent that the purpose of the statute was to require interstate autobuses to pay their fair share of taxation, and that a tax was to be levied on the privilege of using the highways in the State in order to compensate the State in part for the costs of constructing and maintaining its network of highways and of administering road laws. See Interstate Busses Corp. v. Blodgett, 19 F.2d 256 (D.Conn.1927), affirmed 276 U.S. 245, 48 S.Ct. 230, 72 L.Ed. 551 (1928). [Ibid.]
Interstate Busses Corp. v. Blodgett, 276 U.S. 245, 48 S.Ct. 230, 72 L.Ed. 551 (1928), dealt with a Connecticut statute which imposed a tax of one cent for each mile of highway traversed by any motor vehicle used in interstate commerce. Taxpayer was a Connecticut Corporation engaged in the transportation of passengers in motor buses exclusivély in interstate commerce between Connecticut and points in Massachusetts and Rhode Island. The tax was attacked as an unconstitutional burden on interstate commerce.
The same statutory scheme which imposed the tax on interstate commerce also subjected all companies engaged in intrastate motor bus transportation to an excise of three per cent of their gross receipts, subject to certain limited deductions. In affirming the dismissal of the taxpayer’s complaint the court said that the two taxes “are complementary in the sense that ... one effects only interstate and the other only interstate commerce.” 276 U.S. at 251, 48 S.Ct. at 231, 72 L.Ed. at 554. The tax on interstate commerce was therefore held to be constitutional because the total taxing scheme did not discriminate against, nor fall with disproportionate economic weight on, interstate commerce.
There can be no doubt that a state may impose a reasonable nondiscriminatory tax upon interstate carriers which use its highways. Safeway Trails, Inc. v. Furman, supra at 485, 197 A. *51 2d 366. The court held that the tax was not imposed for the privilege of doing an interstate business and did not exceed fair compensation to the State. Id. at 489, 197 A.2d 366. The remaining issue before the court was whether the tax discriminated against interstate commerce in favor of intrastate commerce in violation of the Commerce Clause.
The court concluded that N.J.S.A. 48:4-20 was not unconstitutional because of N.J.S.A. 48:4-14 which at that time provided as follows:
Every person owning or operating an autobus in any municipality of this State shall, on or before the twenty-fifth day of each calendar month, file with the chief fiscal officer of the municipality a statement, verified by oath, showing the gross receipts from the business of such autobus or busses during the preceding calendar month, and shall at the same time pay to such fiscal officer of such municipality 3% of the gross receipts as a monthly franchise tax for revenue for the use of the streets; provided that if the scheduled bus miles over which the autobus is operated shall extend beyond the limits of such municipality, such person shall include in such statement the length of the scheduled bus miles over which the autobus is operated both within and without the municipality, and shall pay as such franchise tax to such municipality 3% of such proportion of the gross receipts as the length of the scheduled bus miles operated in the municipality bears to the entire length of the scheduled bus miles operated both within and without the municipality; provided, however, that none of the provisions of this article shall be applicable to a charter bus operation or special bus operation.
The sum accruing to any municipality under this section when paid shall be in lieu of all other franchise taxes and municipal license fees.
Since intrastate carriers were taxed under N.J.S.A. 48:4-14 for the use of highways, in the absence of proof that the tax imposed on the plaintiffs was more burdensome than that imposed on intrastate carriers, the court concluded that N.J.S.A. 48:4-20 did not discriminate against interstate autobus operators in favor of intrastate autobus operators. The court also held that a tax is not necessarily discriminatory merely because of its form or its measure or method of assessment, citing Interstate Busses Corp. v. Blodgett, supra 276 U.S. at 251, 48 S.Ct. at 231, 72 L.Ed. at 554. It concluded that the tax imposed under N.J.S.A. 48:4-20 did not violate the Commerce Clause of the Federal Constitution nor deny plaintiffs equal protection under the Fourteenth Amendment.
N.J.S.A. 48:4-14 was repealed by L.1972, c. 211, § 6, effective December 31, 1972. At the same time N.J.S.A. 48:4-20 was *52 amended to delete the words “in any municipality to which such owner or operator has paid a monthly franchise tax for the use of its streets under the provisions of section 48:4-14 of this Title” and to add the words “in regular route passenger service provided under operating authority conferred pursuant to R.S. 48:4-3.” L.1972, c. 211, § 2, eff. Dec. 31, 1972. No tax is now imposed on the operation of autobuses in intrastate commerce similar to the tax formerly imposed by N.J.S.A. 48:4-14 and considered in Safeway Trails, Inc. v. Furman, supra.
The Supreme Court of the United States has ruled that a state tax is not an unconstitutional burden upon interstate commerce if (1) there is a sufficient nexus with the state to justify the tax, (2) the tax is fairly related to the benefits provided by the state to the taxpayer, (3) the tax does not discriminate against interstate commerce and (4) the tax is fairly apportioned to local activities. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct.1076, 51 L.Ed.2d 326 (1977), reh’g den. 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977).
A careful reading of Safeway Trails, Inc. v. Furman indicates that N.J.S.A. 48:4-20, in the form considered in that case, met all of the requirements elaborated in Complete Auto. However, the 1972 repeal of N.J.S.A. 48:4-14 precludes N.J.S.A. 48:4-20 in its present form from meeting all of the requirements of Complete Auto in order to be a constitutional statute not offensive to the Commerce Clause. The third test, nondiseriminatory treatment of interstate transactions, is no longer satisfied; the tax discriminates by its own terms against interstate commerce. This third test is satisfied only if a similar tax burden is placed on intrastate commerce. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940); Airwork Service Division v. Taxation Div. Director, 2 N.J.Tax 329 (Tax Ct.1981), aff’d 4 N.J.Tax 532 (App.Div.1982), certif. granted 93 N.J. 246, 460 A.2d 656 (1983).
The former dual taxation system imposed on bus mileage traversed in this State is analogous to the statutory system of taxation discussed in CIT Fin. Services v. Taxation Div. Di *53 rector, 4 N.J.Tax 568 (Tax Ct.1982). In holding the Corporation Income Tax Act, N.J.S.A. 54:10E-1 et seq., constitutional in its application to plaintiff’s activities in New Jersey, the court said:
As for the nondiscriminatory requirement, the statute contemplates a fair and reasonable allocation of plaintiff’s entire net income reasonably attributable to New Jersey, thereby placing plaintiff on the same footing with domestic corporations subject to tax under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq. The taxing statute in issue is not discriminatory, [id. at 580; footnote omitted]
Since the bus excise taxing system now only imposes a tax on interstate miles traversed in New Jersey and, by the very terms of N.J.S.A. 48:4-20, specifically excludes intrastate miles from such taxation, it is an unconstitutional burden on interstate commerce.
Defendant states in one of its briefs that:
Whether or not the bus operation is local or out-of-state, the excise tax is imposed on the use of New Jersey highways when the New Jersey mileage is traversed in conjunction with a strictly interstate trip. Likewise, whether or not the taxpayer is a local business or an out-of-state carrier, the use of New Jersey highways does not incur a tax when the transportation of passengers is from one point in New Jersey to another point in New Jersey.
A better definition of an unconstitutionally discriminatory tax cannot be imagined. Nevertheless, defendant argues that, since local and out-of-state companies are treated equally, the tax is not violative of the Commerce Clause. In making such an argument, defendant relies on Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). That case does not support the argument. To the contrary, in that case the conclusion that Louisiana’s taxing scheme was invalid under the Commerce Clause was based on the court’s determination that gas was being taxed while it was in interstate commerce. Maryland v. Louisiana clearly discredits the bus excise tax because of its burden on interstate commerce. The court also said that:
The obvious economic effect of this Severance Tax Credit is to encourage natural gas owners involved in the production of OCS gas to invest in mineral exploration and development within Louisiana rather than to invest in further OCS development or in production in other States. [451 U.S. at 757, 101 S.Ct. at 2134, 68 L.Ed.2d at 602]
*54 The court therefore did conclude that the tax also favored local economic interests. The Supreme Court did not, however, indicate that, had the tax not favored local interests, it would have been valid under the Commerce Clause, as defendant argues in the present case.
Maryland v. Louisiana cites Haliburton Oil Well Cementing Co. v. Reily, 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963) in which a Louisiana sales and use tax was held to be in violation of the Commerce Clause because it discriminated against out-of-state manufacturer-users as opposed to in-state taxpayers. From such a result defendant would have this court sustain the bus excise tax because it does not distinguish between in-state and out-of-state taxpayers. This argument is fallacious. Indeed a tax may be unconstitutional if it discriminates against out-of-state taxpayers. However, if a tax otherwise discriminates against interstate commerce, it is not saved because it improperly impacts both on local businesses and on out-of-state businesses. It is not logical to argue, in support of a tax that discriminates against interstate commerce, that it burdens the interstate commerce in which a New Jersey company is engaged as much as it burdens the interstate commerce in which an out-of-state company is engaged. The Commerce Clause interdiction is against discriminatory taxation of interstate commerce no matter who engages in it. It is commerce which is to be protected, and the location of the taxpayer engaged in such commerce is not dispositive of the issue if the tax discriminates against interstate commerce. When dealing with questions of the constitutionality of taxing statutes under the Commerce Clause, courts speak in terms of “commerce,” that is, activities or transactions. Wiemar Storage Co. v. Dill, 103 N.J.Eq. 307, 143 A. 438 (Ch.Ct.1928). The court there pointed out that the determination of the validity of a tax in this area of the law depends on “the occupation of selling” or on “goods in transit” or on “the transportation of such goods.” Cf. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940).
*55 Defendant also claims that the repeal of the gross receipts tax formerly imposed by N.J.S.A. 48:4-14 was to effectuate a legitimate local purpose, namely indirect subsidization of an ailing local bus industry. Thus, it is argued, the resulting tax scheme is valid if the effect on interstate commerce is only incidental. Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). For support of this proposition defendant also relies on Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) which held that local legislation impacting only incidentally on interstate commerce will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the local benefits.
Even though repeal was directed to a legitimate local purpose, if the effect on commerce is more than incidental, the resulting tax on interstate commerce is unconstitutional. Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); Raymond Motor Trans., Inc. v. Rice, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978). A tax which falls exclusively on interstate commerce and which by its very terms does not burden intrastate commerce at all cannot be said to have an incidental effect[3] on interstate commerce. If a tax is discriminatory, a valid state objective does not save it. Boston Stock Exch. v. State Tax Comm., 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977).
Defendant tacitly admits the unconstitutionality of N.J.S.A. 48:4-20 in his letter brief of November 17, 1982 in which he urges
... that the only cure for any constitutional defect which this Court might find in the Bus Excise Tax may be the voiding of the amendatory repeal and changes under the Laws of 1972, chapter 211, and the effectuation of the pre-existing taxing scheme. The 1934 version of the Bus Excise Tax and the Gross Receipts Tax should stand unaffected by the abortive amendment. This would then leave it to the Legislature to respond, if they so elect, with a direct subsidization program (assuming one would not already be available to the carriers providing intrastate regular route passenger service).
*56 Without regard to the impossible implementation of such a scheme, it is doubtful that any court has ever been called upon to engage in such judicial legislating.
It is true that, as pointed out by defendant, amendments to legislation have been declared unconstitutional. Lane Distrib., Inc. v. Tilton, 7 N.J. 349, 81 A.2d 786 (1951); Washington National Ins. Co. v. Review Bd., 1 N.J. 545, 64 A.2d 443 (1949). These cases do not, however, give this court authority to enact legislation repealed by the Legislature to cure a constitutional defect in the remaining legislation. In any event, the Legislature specifically prohibited the imposition of municipal taxes on autobuses. N.J.S.A. 48:4-14.1, L.1972, c. 211, § 5, effective December 31, 1972. Trailways, Inc. v. Atlantic City, 179 N.J.Super. 258, 431 A.2d 191 (Law Div.1980).
In the absence of a “complementary” tax on intrastate commerce, the present bus excise tax discriminates against, and falls with disproportionate economic weight on, interstate commerce. The existing legislation offends the Commerce Clause of the Federal Constitution and is void.
In making this determination, the Court is mindful that “a statute is presumed to be constitutional and that a court should exercise sparingly the power to declare a statute unconstitutional.” Jordan v. Horsemen’s Benev. and Protective Ass’n., 90 N.J. 422, 433, 448 A.2d 462 (1982). The Court has searched the tax statutes for a complementary tax which might save the excise tax. N.J.S.A. 48:16-25 does impose a gross receipts tax on certain intrastate autobus travel. “Autobus” as used in this statute is defined in N.J.S.A. 48:16-23 as
... any automobile or motor bus, commonly called jitney ... with a carrying capacity of not more than 20 passengers operated under municipal consent upon a route established wholly within the limits of not more than four contiguous municipalities within any county of the fifth or sixth class....
As a result of this definition, the tax imposed is so geographically confined and so limited by bus size that, on its face, N.J.S.A. 48:16-25 is not a complementary tax.
In view of the determination reached on the discriminatory nature of the tax in violation of the Commerce Clause, it is not *57 necessary to deal with plaintiff’s equal protection argument. However, a determination must be made as to the amount of the tax to be returned to plaintiff.
In its complaint plaintiff seeks a refund of all bus excise taxes paid under N.J.S.A. 48:4-20 since November 1977, except taxes on charter bus miles. It urges that the provisions of the State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 et seq., apply to its claim, specifically N.J.S.A. 54:49-14 which provides that a taxpayer may claim a refund "of taxes at any time within two years after payment of the taxes. In its brief plaintiff argues that it may even be entitled to a refund of all taxes paid under N.J.S.A. 48:4-20, except for taxes on charter bus mileage, since January 1973 because of the repeal of N.J.S.A. 48:4-14, effective December 31, 1972. It makes this argument even though its refund claim, the complaint and the pretrial order all specifically limit plaintiff’s claim to the period of time from November 1977.
Plaintiff relies on In re Fees of State Bd. of Dentistry, 84 N.J. 582, 423 A.2d 640 (1980). In that case certain fees charged by the State Board of Dentistry had been invalidated by judicial determination but the board refused to refund the fees. In ordering the board to refund the fees the Supreme Court said:
A long line of decisions in this State establishes the principle that when a tax already collected is set aside by judicial decision, “the law raises an assumption to refund the money which can no longer be honestly retained.” The taxing entity has “not a particle of right to the money in question,” which is due to the taxpayer “according to the principles of common honesty.” [Id. at 587, 423 A.2d 640; emphasis supplied]
The court then went on to recognize that the primary exception to this rule of restitution is the “volunteer rule.” It provides that “where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforceable against him, he cannot recover it back.” Id. at 588, 423 A.2d 640. The volunteer rule applies to the overpayment of taxes. However, the court also stated that:
It is well-established that the payment of a tax in order to avoid the loss of the payor’s right to practice his profession or to continue in business renders the payment involuntary and moves it from the ambit of the volunteer rule. [Id. at 588-589, 423 A.2d 640]
*58 The court then concluded that in view of the licensing provisions of N.J.S.A. 45:6-13, the dentists were entitled to refunds of fees[4] paid in accordance with the judicially invalidated statute.
Defendant denies plaintiff’s first contention on the ground that the bus excise tax is not payable to or collectible by the Director of the Division of Taxation. N.J.S.A. 54:48-2 defines a state tax as “any tax which is payable to or collectible by the” Director of the Division of Taxation. Since the subject tax is not so payable nor collectible, defendant argues that the provisions of the State Tax Uniform Procedure Law cited by plaintiff are not applicable. Defendant, in turn, relies on N.J.A.C. 13:18-7.7 a regulation allegedly adopted by defendant pursuant to N.J.S.A. 48:4-24. This regulation provides for a limited credit only for overpaid taxes.
Defendant also contends in response to the argument based on In re Fees of State Bd. of Dentistry that there is a difference between N.J.S.A. 45:6-13 and N.J.S.A. 48:4-30, the provision in the bus excise tax legislation dealing with the revocation of authority to operate autobuses in this State. However, any difference between the effect of N.J.S.A. 45:6-13 and N.J.S.A. 48:4-30 on the respective industries involved is more imagined than real.
There is no basis in N.J.S.A. 48:4-24 for the limitations imposed by N.J.A.C. 13:18-7.7. Administrative interpretations of statutes are entitled to considerable weight, but executive agencies are not permitted to interpret and apply statutes in a way unwarranted by the legislation itself. In the present case the limiting regulation on which defendant relies is beyond the scope of the legislation allegedly authorizing it and is invalid. Spencer Gifts, Inc. v. Taxation Div. Director, 3 N.J.Tax 482 (Tax Ct.1981).
Plaintiff is entitled to a refund of taxes paid under N.J.S.A. 48:4-20, except taxes paid on charter bus mileage *59 traversed in New Jersey. Plaintiff is not, however, entitled to a refund for all invalid taxes paid since January 1, 1973. Its original claim only sought a refund of taxes paid since November 1977. Additionally, the pretrial order specifically limits plaintiff’s claim to a refund for taxes paid from November 1977 to June 1979. Saia v. Bellizio, 53 N.J. 24, 247 A.2d 865 (1968); Jardine Estates, Inc. v. Koppell, 24 N.J. 536, 133 A.2d 1 (1957).
Even more important than the original claim or the technical requirements of a pretrial order is the legislative intent expressed in N.J.S.A. 54:48-1 et seq. While by definition this statutory provision does not apply to the bus excise tax because the tax is not paid to the Director, Division of Taxation, there is no reason to distinguish among taxes paid to the State of New Jersey on the basis of which division of state government is the payee. Since the Legislature has decreed that a two year limitation should apply to refunds of taxes paid to the Division of Taxation, the same limitation should apply to refunds of taxes paid to the Division of Motor Vehicles. Limitations on tax refunds ensure the stability of government revenues.
Consideration of N.J.S.A. 54:48-1 et seq. in this matter also buttresses the determination that taxes should be refunded. There is no provision in N.J.S.A. 54:48-1 et seq. limiting the refund of taxes by the “volunteer rule” previously discussed. The statute clearly provides for the refund of incorrectly paid taxes without any requirement that the taxpayer not be a volunteer in making the payment. A further expression of legislative intent can be found in the Motor Fuels Use Tax Act of 1963, N.J.S.A. 54:39A-1 et seq. That act involves a tax which is payable to the Director of the Division of Motor Vehicles, defendant herein. The act specifically provides for a refund of an overpayment of tax if a taxpayer files for the refund at any time within two years after payment.
Defendant shall repay to plaintiff all bus excise taxes paid from November 1977 to June 1979, except that excise taxes paid on charter bus miles shall not be refunded. Agreed computa *60 tions shall be submitted to the court in accordance with R. 8:9-3 for the entry of final judgment.

Now the Board of Public Utilities, N.J.S.A. 52:27F-6, L.1977, c. 146, § 5.1, eff. July 11, 1977.

The general jurisdiction of the I.C.C. is set forth in 92 Stat. 1361; 49 U.S.C.A. § 10521. Licensing requirements are in 92 Stat. 1409; 49 U.S.C.A. § 10921.

Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174, 178 (1970) speaks in terms of “effects and burdens” on interstate commerce.

The amounts of the refunds were limited by the court in a manner not relevant to the issues presently before the court.