**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



MALA SUNDAR
JUDGE

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

April 29, 2020
(Opinion amended to correct typo on page 9)

Karyn Farrell, Plaintiff
Self-Represented

Dennis Collins, Esq.
Collins, Vella, and Casello, LLC
Attorney for Defendant

Re:     Farrell v. Borough of Monmouth Beach
        Docket No. 008396-2019

Dear Plaintiff and Counsel:

This is the court's decision following trial of the above-captioned matter. Plaintiff owns a single-family residence, located at Block 61, Lot 11 (Subject), in defendant taxing district (Borough). For tax year 2019, the Borough imposed a local property tax assessment of $737,100 (allocated $439,800 to land; $297,300 to improvements) on the Subject. Plaintiff petitioned the Monmouth County Board of Taxation (County Board), which reduced the assessment to $710,500 (allocated $439,800 to land; $270,700 to improvements).

Plaintiff appealed the County Board's judgment to this court. She provided the sale prices of five single-family residences in the Borough, which ranged from $590,000 to $687,500, and contended that their average proved that the Subject's value should be $600,000 but in no event higher than $650,000.

The Borough's real estate appraiser, accepted by the court as an expert in residential real estate appraisal, maintained that the adjusted prices of three sales in the Borough (one of which was a sale also used by Plaintiff) supported the Subject's value as being $735,000.









The court finds that Plaintiff's use of comparable sales, all in the Borough, and with sale dates proximate to the assessment dates, allow for the overcoming of the presumptive correctness of the Subject's assessment. However, the average of the unadjusted sale prices of these sales is not credible evidence of the Subject's value. The comparables differ from the Subject as to lot size, gross living area (GLA), age and style, as to which no adjustments were made, nor were the bona fides of two sales, one marked as subject to a lis pendens, and the other as being an estate sale, verified.

The court rejects the Borough's appraiser's adjustments to the sale prices of his three comparables to account for the Subject's elevation, the same being unsubstantiated, and further rejects the adjustment to Sale 2 for Amenities/Modernization as duplicative. The re-adjusted sale prices of $708,700; $688,000; and $731,300 allow the court to find the Subject's value of $710,500 as concluded by the County Board to be reasonable. Therefore, the judgment of the County Board is affirmed.

**FACTS AND ANALYSIS**

The Subject is a lot measuring 60 x 121 square feet (SF), or about 0.17 acres. It is improved by a single-family home built in 1907. It is in a flood zone but in a residential neighborhood.

Plaintiff bought the Subject in 1993. In 2011, the home was substantially renovated and improved with a new kitchen, extra bedroom, marble-tiled bathroom, and a laundry room. In 2012, it was damaged due to Hurricane Sandy, which required replacing the flooring on the entire first floor including the kitchen; replacing kitchen appliances and cabinetry up to the stovetop level; reconfiguring the living room, utilities, and bathroom on the first floor; raising the Subject on concrete pylons; and adding an elevator. All these repairs and renovations were completed in 2016. The framework, however, is the same, thus it is over 100 years old. The photographs

attached to the Borough's appraiser's report show the interior and exterior to be in good condition, with wooden floors in the interior, and marble kitchen island and counters, wooden cabinets and cool backsplash. The bathroom has tiled floors, a standup shower and a bathtub.

As of the valuation date herein, the house was elevated, had two stories, and was colonial-style. The GLA measured 2,125 SF with three bedrooms and two full baths, a fireplace, two decks, two open porches and a detached two-car garage. There is no basement. The base of the house is on a concrete slab with spaced concrete bricked pylons (to raise the house) and is open-spaced. The Subject is proximate to the border of the City of Long Branch. Its rear borders wetlands, and a tributary of the Shrewsbury River flows beyond the Subject's rear. Per Plaintiff, this causes flooding of the Subject.

Plaintiff provided the following five sales of single-family houses, all located in the Borough, as evidence of the Subject's value:

| Sale | Sale Price | Sale Date | Lot | GLA | Age | Other |
|------|-----------|-----------|-----|-----|-----|-------|
| 25 Tocci Ave | $600,000 | 10/16/18 | 50x150 SF | 2088 SF | 1937 | Colonial style |
| 18 Cook St | $590,000 | 07/23/18 | 90x155 SF | 1404 SF | 1905 | Neighbor |
| 55 Riverdale Ave | $565,000 | 06/28/18 | 50x104 SF | 1419 SF | 1921 | 2-3 baths |
| 4 Shrewsbury Dr | $660,000 | 09/28/18 | 87x142 SF | 1771 SF | 1962 | Ranch style; 2-3 baths; detached garage; pool |
| 8 Club Cir. | $687,500 | 10/05/18 | unknown | 3563 SF | 1905 | attached garage; waterfront property |

Her data source was the information posted on the County Board's website, njactb.org. She drove by these houses for an exterior inspection, and other than Sale 2, which neighbored the Subject, she did not inspect the interiors of any other comparables. She contended that Sale 2 is the most reliable indicator of the Subject's value because the house was a similar colonial style with similar room count and a detached garage, and the rear faced the same marshy area and the tributary of the Shrewsbury River.

The Borough's appraiser relied upon four sales, all in the Borough, as follows:

3

| Sale | Price | Sale Date | Lot | GLA | Age | Other |
|------|-------|-----------|-----|-----|-----|-------|
| 38 Riverdale Ave | $697,500 | 08/06/18 | 0.18 acres | 2,052 SF | 1905 | 3 beds; 2 baths; crawl space; 1-car detached garage; condition similar to Subject since renovated 2017 |
| 18 Cook St | $590,000 | 06/11/18 | 0.39 acres | 1,404 SF | 1905 | 2 beds; 2 baths; crawl space; 2-car detached garage; "fair" condition |
| 77 Riverdale Ave | $760,000 | 05/01/18 | 0.11 acres | 2,120 SF | 1907 | 3 beds; 2 baths; partial/unfinished basement; driveway; "superior" condition since renovated 2018 |
| 9 Johnson St | $830,000 | 02/21/18 | 0.31 acres | 2,354 SF | 1926 | 4 beds; 3 baths; crawl space; 2-car built-in garage; condition similar to Subject |

He adjusted the sale prices for differences in lot size, GLA, basement/finish, garage count, age/condition, and amenities/modernization (an addition to the sale price indicating the Subject is superior as to a particular feature, while a reduction indicating the Subject is inferior to the comparative feature). The basement/finish adjustment was for the fact that the Subject was elevated, while the comparables were not. The elevation, per the appraiser, rendered the Subject superior in terms of flood safety and lower flood insurance cost to a homeowner. He noted that Sale 2 (Plaintiff's neighbor) was inferior in that aspect since it was elevated only post-sale. His adjustments for lot size, he stated, were about $10 per SF, while the condition adjustment was about 15% of the sale price for Sale 2, and 10% of the sale price for Sale 3. He also noted that Sales 1 and 3 were renovated in 2017 and 2018, respectively, similar to the Subject; however, Sale 3's renovations rendered that comparable superior to the Subject, meriting a negative adjustment. He stated that he had inspected the Subject's interior and exterior in September 2017, and for purposes of the tax year at issue here (2019), did not revisit the Subject's interior but did an exterior inspection only, and did not observe any difference. In 2017, the Subject's improvements were in good condition. The GLA adjustments, per the math, were $100 per SF. The gross adjustments

for each comparable were $43,400; $268,200; $133,300; and $124,100, while the net adjustments were $31,200; $143,000; ($18,700); and ($84,100).[1]

The net adjustments provided adjusted sale prices of $728,700; $733,000; $741,300; and $745,900, respectively, which the appraiser reconciled for a value conclusion of $735,000. He placed the most weight on Sales 1 and 3 due to their overall similarity to the Subject as to lot size and GLA, and also because they required the least adjustments. Although he used Sale 2 (also used by Plaintiff), he stated that it was used more as a test. He placed no reliance on Sale 4 (and did not testify as to it) although he included it in his report, and contended that regardless, his value conclusion of $735,000 was reasonable.

Plaintiff's use of comparable sales as a valuation methodology is reasonable. Greenblatt v. City of Englewood, 26 N.J. Tax 41, 53 (Tax 2010) (citation omitted). The sales being single-family homes, all located in the Borough, with sale dates proximate to the assessment date, allow the court to find that she overcame the presumptive correctness of the Subject's assessment. See MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998) (the burden to overcome the presumptive correctness of a local property tax assessment is on its challenger). However, it does not follow that the assessment should therefore be reduced. Rather, Plaintiff must still persuade the court, with credible, objective evidence why the Subject is over-assessed and what is, or should be, the Subject's value. Ibid. This was not done here.

---

[1]
| | | | | |
|---|---|---|---|---|
| Lot Size | ($6,100) | ($62,600) | $27,300 | ($61,200) |
| GLA | $7,300 | $72,100 | $0 | ($42,900) |
| Basement/Finish | $20,000 | $20,000 | $10,000 | $20,000 |
| Garages | $10,000 | $0 | $20,000 | $0 |
| Age/Condition | $0 | $88,500 | ($76,000) | $0 |
| Amenities/Modernization | $0 | $25,000 | $0 | $0 |
| GROSS ADJUSTMENT | $43,400 | $268,200 | $133,300 | $124,100 |
| NET ADJUSTMENT | $31,200 | $143,000 | ($18,700) | ($84,100) |

A comparative analysis requires a "focus on the similarities and differences that affect value . . . which may include variations in property rights, financing, terms, market conditions and physical characteristics." VBV Realty, LLC v. Township of Scotch Plains, 29 N.J. Tax 548, 560 (Tax 2017) (citation and internal quotation marks omitted). Unless a comparable is almost identical or the difference in a feature is negligible (i.e., will not impact the sale price in the market), the differences are accounted for by making adjustments (upward or downward) to the comparables' sales prices. See U.S. Life Realty Corp. v. Township of Jackson, 9 N.J. Tax 66, 72 (Tax 1987) ("differences between a comparable . . . and the subject property are anticipated. They are dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other.").

Plaintiff did not engage in this exercise but rather simply relied upon the sale prices of her five comparables. This does not assist the court. For instance, Sale 4 was ranch-style, unlike the Subject's style. Style variations can command different prices. Sales 2, 3, and 4 had significantly smaller GLAs as compared to the Subject, but for which the sale price was not adjusted upward. Plaintiff's argument that the smaller GLA is offset by a comparable's larger lot size asks the court to assume that the lot size dollar adjustment is the same as an adjustment for the GLA difference. Without market-supported evidence to show that the market (buyers) will pay the same price for smaller houses with larger lots and bigger houses with smaller lots, the court cannot accept this inference. The Subject was renovated in 2016; however, there was no information whether the other comparables were in a similar renovated condition.

In sum, the unadjusted sale prices of these sales are not credible evidence of the Subject's value. See Am. Cyanamid Co. v. Township of Wayne, 17 N.J. Tax 542, 581 (Tax 1998), aff'd, 19

N.J. Tax 46 (App. Div. 2000) ("without . . . adjustments [to the comparables' sale prices], the sales provide no meaningful indication of the value of the subject property"). Nor does averaging unadjusted sale prices. Wedgewood Knolls v. Borough of West Paterson, 11 N.J. Tax 514, 523 (Tax 1991). Nor does comparing the comparables' assessments assist the court in determining the Subject's value. See AHS Hosp. Corp. v. Town of Morristown, 28 N.J. Tax 456, 520 (Tax 2015) ("comparing assessments of different properties in a property tax appeal is disallowed - the other assessment may be incorrect").

Further, Sales 4 and 5 were marked as non-usable (NU), one sale because of a lis pendens and the other sale because it was by an executor.[2] Without any examination into their bona fides, using them as credible comparables raises a doubt. See VBV Realty 29 N.J. Tax at 564 ("[v]ital to the accuracy and integrity of the sales comparison approach is the premise that information and data must be properly sourced, verified and analyzed to ensure accuracy and to better understand the attitudes and motivations of the buyer and seller") (citation and internal quotation marks omitted). Note that a sale by an executor may be used as a comparable "if after full investigation" the sale was between parties neither under a compulsion to sell or buy and was a fair market sale. N.J.A.C. 18:12-1.1(b). But Plaintiff must first satisfy this court of the sale's reliability. However, she conceded that she did not verify the details of either sale (indeed of any sale). Without verification of its bona fides, the court cannot simply accept a sale price as a credible indicator of the Subject's value.

---

[2] In developing a credible sales-to-assessment ratio for use in the table of equalized valuations for each taxing district, the Division of Taxation reviews "the sales prices and assessed values of all real property sold during the sampling period" and "discards those sales which fall into one or more of 27 categories of transactions [set forth in N.J.A.C. 18:12-1.1] deemed to yield unreliable results[.] . . . These are called nonusable sales." Borough of Englewood Cliffs v. Dir., Div. of Taxation, 18 N.J. Tax 662, 665 (App. Div. 2000) (citation and internal quotation marks omitted).

The Borough's appraiser's Sales 1 and 3 are closest in lot size and GLA to the Subject. Although they do not have a creek in the rear of their lots, they are in a flood zone requiring an 8-foot elevation, as is the Subject. The Borough's appraiser also opined that since they were renovated in 2017 and 2018 respectively,[3] they were similar to the Subject, which was renovated in 2016. Plaintiff disagreed on the grounds that Sales 1 and 3 were "completely renovated" in 2017/2018 (as described in the Multiple Listing Services (MLS)), whereas the Subject was only repaired in 2016 to mitigate Sandy damage, its "complete" renovation having occurred in 2011, thus, at least six to seven years before the comparables' complete renovations. She added that the 2016 changes were not "renovations" but simply repairs to the Subject, in that what was replaced (floors, kitchen cabinets) were of the same type and/or make/model used in 2011.

The court is unpersuaded that the *reason* for the renovation renders Sales 1 or 3 as non-comparable. Nor does it matter that the brand-new replacements in the Subject were of the same type, make, or model which were used in 2011. The focus is on the condition, and if the appraiser found the condition similar, inferior, or superior, as compared to the Subject (based on his 2017 inspection), he adjusted for that factor. The issue is, rather, the credibility of the Borough's appraiser's adjustments for condition. And as to this, the court finds the same to be reasonable.

The court is unpersuaded by the Borough's appraiser's adjustments for the Subject's elevation (which his report labeled "Basement/Finish"). He claimed that the elevation was a superior feature as it protected the property from floods and provided significant monetary savings to a homeowner in connection with flood insurance premiums. However, this opinion is bereft of

---

[3] It is unclear why comparable 3 was marked by the Borough's assessor as NU 7 ("Sales of property substantially improved subsequent to assessment and prior to the sale thereof," see N.J.A.C. 18:12-1.1(a)(7)). The sale date was May 1, 2018, while the assessment date for tax year 2019 was October 1, 2018.

any supporting objective data. The appraiser could have provided information as to sales of homes in the neighborhood or competing neighborhoods, to show the difference in sale prices between elevated homes (post Sandy-damage) and those which were not, from which the court could surmise that the market would pay more or less for this physical characteristic. Nor was there any evidence as to the alleged savings in flood insurance costs, whether the Subject was subject to this cost, or whether flood insurance was mandatory or optional.[4]

The court also finds the appraiser's $25,000 adjustment to Sale 2 for lack of "Amenities/Modernization" to be duplicative of his $88,500 adjustment for "Age/Condition." The former would logically, and should, be included in a condition adjustment. Therefore, it is rejected. The remaining adjustments are reasonable.

Removing these adjustments provides the court with the adjusted sale prices of Sales 1, 2, and 3 as $708,700; $688,000; and $731,300. Giving most weight to Sale 1 (closest to the assessment date), and equal weight to Sales 2 and 3, the court finds the Subject's value of $710,500 as concluded by the County Board to be reasonable.[5] Therefore, the judgment of the County Board is affirmed.

Very truly yours,

Mala Sundar, J.T.C.

---

[4] Casting further doubt on the credibility of this adjustment is his assignment of $10,000 to Sale 3, but $20,000 to Sales 1 and 2. If, in his opinion, elevation increases value, then the same adjustment should be applied to all non-elevated comparables regardless of whether they had a basement, partial basement, or a crawl space. Yet he deemed Sale 3 as less inferior because it had a partial unfinished basement and Sales 1 and 2 more inferior because they had a crawl space.

[5] The County Board's judgment is the assessment for the Subject for tax year 2019, since it is entered as such on the May 5 final tax list in accordance with N.J.S.A. 54:4-35(b).